# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

CIVIL ACTION NO. _____

| | |
|---|---|
| **CARDINAL FINANCIAL COMPANY D/B/A SEBONIC FINANCIAL**, <br><br> Plaintiff, <br><br> vs. <br><br> **INVESTORS TITLE INSURANCE COMPANY** and **SHOPE KROHN ATTORNEYS AT LAW, P.A.**, <br><br> Defendants. | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

COMES NOW Plaintiff, Cardinal Financial Company, LP d/b/a Sebonic Financial ("Cardinal"), by and through its undersigned counsel, and states its complaint against Defendants Investors Title Insurance Company ("Investors") and Shope Krohn, Attorneys at Law, P.A. ("Shope Krohn"), and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Cardinal is a foreign limited partnership organized under the laws of Pennsylvania. The limited partnership comprises Wakefield Partners GP LLC and Wakefield Investors LLC. Wakefield Partners GP LLC's sole member is Wakefield Investors LLC. Wakefield Investors LLC's sole member is WF Cardinal Holdings LLC. The sole member of WF Cardinal Holdings LLC is German Florez who is a citizen domiciled in the State of Arizona.

2. Defendant Investors is a domestic corporation organized under the laws of the State of North Carolina with its principal place of business located in Chapel Hill, North Carolina.

Investors may be served with process at its registered agent, Corporation Service Company, 2626 Glenwood Ave, Ste 550, Raleigh, NC 27608.

3. Defendant Shope Krohn is a domestic professional association with its principal place of business in Guilford County, North Carolina. Shope Krohn conducts business in Mecklenburg County, NC and may be served with process at its registered agent, E. Thomas Maddox, Jr., 426 W Friendly Ave., Greensboro, NC 27401-2202.

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 as there exists complete diversity between the parties and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000).

5. Venue is proper in this court and district pursuant to 28 U.S.C. § 1391(a) as a substantial part of the events giving rise to the claim occurred in North Carolina and because the property that is the subject of this action is situated in Mecklenburg County, North Carolina.

6. All conditions precedent to the bringing of this action have occurred, have been satisfied, or have been waived.

## STATEMENT OF FACTS

7. Prior to September 27, 2024, Cardinal received a loan application for a home loan in the amount of $510,000 (the "Loan") related to property located at 17019 Hedgerow Park Road, Charlotte, NC 28277 (the "Property").

8. Cardinal, after reviewing the application and other underwriting information, decided to provide a loan to Charles J. Strauss in exchange for Mr. Strauss' promise to repay the loan and for a first priority security interest encumbering the Property.

9. Shope Krohn served as the "approved attorney" or "approved settlement provider" for the closing and closing activities related to the Loan as designated on the closing protection letter issued by Investors (discussed below).

10. As part of the closing process, Cardinal required title insurance and Investors agreed to serve as the title insurance underwriter.

11. On or about October 4, 2024, Investors Title issued a title commitment to Cardinal regarding the Loan indicating its commitment to issue a title insurance policy to Cardinal to insure the contemplated Deed of Trust as a valid, enforceable, first priority lien on the Property (the "Title Commitment"). A true and correct copy of the Title Commitment is attached hereto as **Exhibit A**.

12. On or about October 4, 2024, Investors Title issued an ALTA Closing Protection Letter to Cardinal (the "CPL"). The CPL identified Shope Krohn as the "'Issuing Agent', 'Approved Settlement Provider' or 'Approved Attorney'" and expressed Investors' agreement to "indemnify [Cardinal] for actual loss of Funds incurred by You in connection with the closing of the Real Estate Transaction conducted by the Issuing Agent, Approved Settlement Provider, or Approved Attorney." Specifically, in issuing the CPL, Investors agreed to indemnify Cardinal for losses caused by the "failure of the Issuing Agent, Approved Settlement Provider, or Approved Attorney to comply with Your written closing instructions that relate to (a) the disbursement of Funds necessary to establish the status of the Title to the Land; or (b) the validity, enforceability, or priority of the lien of the Insured Mortgage." A true and correct copy of the CPL is attached hereto as **Exhibit B**.

13. The Title Commitment incorporated the CPL and reiterated that the approved attorney was the closing attorney identified in the CPL.

14. After receiving the Title Commitment and CPL, Cardinal provided written closing instructions (the "Closing Instructions") to Shope Krohn, as required by the CPL. In particular, the Closing Instructions required Shope Krohn to ensure compliance with "any and all requirements of the presence and use of attorneys in the mortgage loan and closing process" and "verification of the identity of the Borrower(s)." The Closing Instructions also required Shope Krohn to ensure the issuance of a title insurance policy that insured the security instrument in first lien position. Further, the Closing Instructions required Shope Krohn to "ensure the closing documents are executed by all parties on or after the document date." A true and correct copy of the Closing Instructions is attached hereto as **Exhibit C**.

15. Shope Krohn signed the Closing Instructions agreeing to be bound by them and "attest[ed], certify[ied] and declar[ed]", among other things, that all conditions and requirements were properly met and that it would return a copy of the title insurance policy for the transaction.

16. Because of Cardinal's requirement for the Property to serve as collateral, Cardinal relied on Shope Krohn to comply with its Closing Instructions.

17. In the event that Shope Krohn failed to comply with the Closing Instructions, Cardinal relied on the indemnity provided by Investors in the CPL to reimburse Cardinal for any actual loss caused by Shope Krohn's noncompliance.

18. On October 28, 2024, the Deed of Trust securing the loan was purportedly executed by Charles J. Strauss and Mary K. Strauss in Paulding County, Georgia before Wanda H. Wingfield, as notary (the "Deed of Trust").

19. On or about November 7, 2024, Cardinal funded the loan in the amount of $510,000.

20. On or about November 8, 2024, Shope Krohn recorded the Deed of Trust in the Mecklenburg County, North Carolina public records. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit D**.

21. As reflected on the Closing Disclosure, Shope Krohn was paid a "Title-Settlement Fee" in the amount of $1,150.00 and $697.45 was to be disbursed to Investors for the title insurance policy. A true and correct copy of the Closing Disclosure is attached hereto as **Exhibit E**.

22. Cardinal satisfied or took action to satisfy all of the conditions that it was required to satisfy for the issuance of the title insurance policy, but Investors has refused to provide a copy of the final issued title insurance policy.

23. On or about December 14, 2024, Charles J. Strauss contacted the North Carolina Department of Justice to complain about fraudulent activity related to the Loan.

24. Charles J. Strauss and Mary K. Strauss have attested that they did not authorize a lien against the Property, did not receive any of the funds from the closing of the Loan, that they did not communicate with Shope Krohn, that they did not sign the Deed of Trust, that they were not in Paulding County, Georgia when the Deed of Trust was purportedly signed, and did not appear before (or know) the notary on the Deed of Trust.

25. Shope Krohn, as Investors' Approved Attorney, was required to preside over the closing and verify that the Deed of Trust was properly executed by the borrowers, as required by the Closing Instructions. This requirement is evidenced by Shope Krohn's "Closing Agent Certification" that "attests, certifies and declares" that "All conditions and requirements have been properly met, and that all documentation in order to close the Loan is accurate and in accordance with Applicable Laws." *See* **Exhibit C**.

26. As a result of the complaint from Mr. Strauss, Cardinal submitted a claim to Investors on January 15, 2025.

27. On January 31, 2025, Investors denied coverage for the claim and any liability related to the claim (the "Claim Denial"). A true and correct copy of the Claim Denial is attached hereto as **Exhibit F**.

28. Additional correspondence has been exchanged between Cardinal and Investors, but Investors continues to deny any indemnification obligation under the CPL, Title Commitment or a title insurance policy.

29. Based on the sworn statements from Charles J. Strauss and Mary K. Strauss, the Deed of Trust is unenforceable and Cardinal has suffered an actual and indemnifiable loss.

30. All conditions precedent to this action have occurred or been waived.

### FIRST CLAIM FOR RELIEF
### (Declaratory Relief—Investors)

31. Cardinal incorporates herein the allegations set forth in paragraphs 1 through 30 of the complaint.

32. In issuing the Title Commitment, Investors made a contractual agreement to issue a title insurance policy to Cardinal in connection with the closing of the Deed of Trust.

33. Schedule B, Part I of the Title Commitment contained several requirements, including:

   a. "Pay the premiums, fees, and charges for the Policy to the Company." (Requirement #3)

   b. "Documents satisfactory to [Investors] that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records." (Requirement #4)

c. "Duly authorized and executed Mortgage by Charles J. Strauss and wife, Mary K. Strauss in favor of Cardinal Financial Company dba Sebonic Financial in the amount of $510,000.00." (Requirement #5)

d. "Receipt of Attorney's Final Certificate, along with all additional required documents, in order to issue a final policy or policies." (Requirement #11)

34. Cardinal's Closing Instructions required Shope Krohn, the "Approved Attorney" under Investors' CPL, to satisfy all of those requirements.

35. In executing the Closing Instructions, Shope Krohn "attest[ed], certify[ied] and declar[ed]", among other things, that all conditions and requirements were properly met and that it would return a copy of the title insurance policy for the transaction.

36. Indeed, the CPL states that the Closing Instructions "received and accepted by the Issuing Agent, Approved Settlement Provider, or Approved Attorney after issuing the Commitment that require the removal…or compliance with the requirements contained in the Commitment will not be deemed to require inconsistent title insurance protection."

37. Further, the Closing Disclosure shows that the title insurance premium was paid and the loan was funded.

38. Accordingly, Investors' Approved Attorney certified that all requirements listed in the Title Commitment were fulfilled.

39. Because Cardinal did all it was required to do to fulfill the requirements for the issuance of a title insurance policy, title insurance coverage exists in favor of Cardinal.

40. Despite Shope Krohn's certification, in denying Cardinal's claim, Investors has asserted that no title insurance policy protection exists and that it has no obligation to provide the finally issued title insurance policy jacket.

41. With respect to the CPL, Investors agreed to indemnify Cardinal for its actual loss in connection with the closing of the transaction by Shope Krohn, including when such loss was solely caused by Shope Krohn's failure to comply with written closing instructions that related to "the validity, enforceability, or priority of the lien of the Insured Mortgage."

42. Again, Cardinal's Closing Instructions required Shope Krohn to obtain the signatures of Charles J. Strauss and Mary K. Strauss and verify their identities.

43. Shope Krohn's failure to comply with Cardinal's Closing Instructions was the sole cause of Cardinal's loss.

44. Despite the clear breach of the Closing Instructions, Investors seeks to recharacterize the clear abdication of Shope Krohn's duties as a matter falling into one or more exclusions from indemnification under the CPL.

45. Investors, by its repeated denial of coverage or indemnity under the Title Commitment, CPL or a title insurance policy, has introduced doubt as to Cardinal's coverage and indemnification rights under those agreements.

46. Cardinal, having entered into valid agreements with Investors, is entitled to have this doubt removed.

47. As a result of Investors' failure to fulfill its contractual obligations, Cardinal has been exposed to losses in the amount of $539,711.26, which continue to accrue.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract—Investors)**

48. Cardinal incorporates herein the allegations set forth in paragraphs 1 through 47 of the complaint.

49. Cardinal obtained a valid and enforceable CPL obligating Investors to indemnify Cardinal for its actual loss in connection with the closing of the transaction by Shope Krohn,

including when such loss was solely caused by Shope Krohn's failure to comply with written closing instructions that related to "the validity, enforceability, or priority of the lien of the Insured Mortgage."

50. Cardinal's Closing Instructions required Shope Krohn to obtain the signatures of Charles J. Strauss and Mary K. Strauss and verify their identities.

51. Shope Krohn's failure to comply with Cardinal's Closing Instructions caused an indemnifiable loss and there is no applicable exception or exclusion to indemnity under the CPL.

52. Investors denied Cardinal's demand for indemnity under the CPL and such denial constitutes a breach of contract.

53. Cardinal also obtained valid and enforceable title insurance coverage from Investors in the form of an ALTA 2021 Loan Policy. The ALTA Loan Policy provides insurance for

   a. "a defect in the Title caused by forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;"

   b. "a defect in the Title caused by the failure of a person or Entity to have authorized a transfer or conveyance;"

   c. "a defect in the Title caused by document affecting the Title not properly authorized, created, executed, witnessed, sealed, acknowledged, notarized (including by remote online notarization), or delivered;" and

   d. "the invalidity or unenforceability of the lien of the Insured Mortgage upon the Title," including as a result of forgery, fraud or the failure of a person to have authorized a transfer or conveyance.

54. Based on the sworn statements from Charles J. Strauss and Mary K. Strauss, the Deed of Trust is unenforceable and the circumstances of the invalidity of the Deed of Trust fall within the coverage provisions of the 2021 ALTA Loan Policy existing in favor of Cardinal.

55. Investors, in denying that a title insurance policy exists, has failed to honor the terms of the 2021 ALTA Loan Policy existing in favor of Cardinal by failing to indemnify Cardinal for its actual losses.

56. In addition to the 2021 ALTA Loan Policy's terms and conditions, Investors also owes its Insured a duty of good faith and fair dealing in handling the Claim.

57. Investors' recent coverage position, including the numerous material factual and legal misrepresentations and refusal to pay the Claim, constitutes a breach of the duty of good faith and fair dealing owed to Cardinal.

58. As a result of Investors' failure to comply with the terms of the CPL or 2021 ALTA Loan Policy and breach of the duty of good faith and fair dealing, Cardinal has suffered actual and compensatory damages.

**THIRD CLAIM FOR RELIEF**
**(Bad Faith—Investors)**

59. Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 58 of the complaint.

60. On January 15, 2025, the Insured submitted a notice of claim to Investors based on complaint and allegations from Mr. Strauss.

61. In response to the Claim, on January 31, 2025, Investors denied coverage for the claim and any liability related to the Claim.

10
Case 3:25-cv-00616-KDB-SCR    Document 1    Filed 08/13/25    Page 10 of 18

62. In the Claim Denial, Investors asserted that the requirements in the Title Commitment had not been met for the binding of title insurance coverage, notwithstanding its Approved Attorney's certification that the requirements had been met.

63. Further, Investors asserted that the Title Commitment was cancelled.

64. In its Claim Denial, Investors cited to *Glass v. Stewart Title Guaranty Co.* for the proposition that a forged deed did not satisfy the title insurance commitment's requirements.

65. The *Glass* decision, however, has been expressly disapproved by the Georgia Supreme Court. Indeed, the opinion overruling *Glass* held that "in the absence of language in a title insurance commitment that plainly excludes coverage for a forgery, a commitment must be construed to provide coverage for forgeries."

66. When this misrepresentation regarding the legal foundation for the denial was pointed out to Investors, it failed to explain its efforts to mislead Cardinal regarding its reliance on overruled case law.

67. After Investors' denial of coverage, Shope Krohn attempted to refund the title insurance premium paid by Cardinal. Cardinal has rejected that attempted refund.

68. Further, Investors has sought to misrepresent the facts surrounding the Claim as generalized "mortgage fraud." Though admitting that its Approved Attorney, Shope Krohn's role was "closing the Transaction," Investors' purposefully has attempted to obfuscate Shope Krohn's failure to exercise any supervision or fulfillment of the requirements of the Closing Instructions with the acts of a third-party to misrepresent Investors' indemnification obligations.

69. Investors' denial of claim and present failure to indemnify Cardinal for its actual losses is not based on a legitimate or honest disagreement as to the validity of the Claim.

70. Based on the material factual and legal misrepresentations contained in the Claim Denial, Investors' denial of claim constitutes a willful, reckless and wanton disregard of Cardinal's rights under the 2021 ALTA Loan Policy.

71. The Claim Denial's material factual and legal misrepresentations also constitute aggravating or outrageous conduct on the part of Investors.

72. As a result of Investors' bad faith, Cardinal is entitled to actual, compensatory and punitive damages.

**FOURTH CLAIM FOR RELIEF**
**(Unfair or Deceptive Trade Practices – N.C. Gen. Stat. 75--Investors)**

73. Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 72 of the complaint.

74. On January 15, 2025, the Insured submitted a notice of claim to Investors, pursuant to the title insurance and indemnity protection that Cardinal purchased from Investors, based on the complaint and allegations from Mr. Strauss.

75. In response to the Claim, on January 31, 2025, Investors denied coverage for the claim and any liability related to the Claim.

76. In the January 31, 2025 letter, Investors asserted that the requirements in the Title Commitment had not been met for the binding of title insurance coverage, notwithstanding its Approved Attorney's certification that the requirements had been met.

77. Further, Investors asserted that the Title Commitment was cancelled.

78. In the Claim Denial, Investors cited to *Glass v. Stewart Title Guaranty Co.* for the proposition that a forged deed did not satisfy the title insurance commitment's requirements.

79. The *Glass* decision, however, has been expressly disapproved by the Georgia Supreme Court. Indeed, the opinion overruling *Glass* held that "in the absence of language in a title insurance commitment that plainly excludes coverage for a forgery, a commitment must be construed to provide coverage for forgeries."

80. When this misrepresentation regarding the legal foundation for the denial was pointed out to Investors, it failed to explain its efforts to mislead Cardinal regarding its reliance on overruled case law.

81. After Investors' denial of coverage, Shope Krohn attempted to refund the title insurance premium paid by Cardinal. Cardinal has rejected that attempted refund.

82. Further, Investors has sought to misrepresent the facts surrounding the Claim as generalized "mortgage fraud." Though admitting that its Approved Attorney, Shope Krohn's role was "closing the Transaction," Investors' purposefully has attempted to obfuscate Shope Krohn's failure to exercise any supervision or fulfillment of the requirements of the Closing Instructions with the acts of a third-party to misrepresent Investors' indemnification obligations.

83. N.C. Gen. Stat. § 75-1.1 deems "unfair or deceptive acts or practices in or affecting commerce" to be "unlawful."

84. N.C. Gen. Stat. § 58-63-15(11) sets forth several unfair claims settlement practices that constitute *per se* violations of N.C. Gen. Stat. § 75-1.1.

85. Investors has committed prohibited practices set forth in N.C. Gen. Stat. § 75-1.1 by issuing the January 31, 2025 Letter, including but not limited to:

- a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

- d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

- g. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured; [and]

- n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

86. Investors' issuance of the 2021 ALTA Loan Policy, issuance of the Title Commitment, and the Claim Denial constitute engagement in a business affecting commerce.

87. Investors' issuance of Claim Denial is inherently unfair, unscrupulous, immoral, and injurious to its insureds, such as Cardinal.

88. Investors' issuance of the Claim Denial had a tendency or capacity to mislead and deceive and, in fact, did mislead and deceive Cardinal with respect to the coverage available under the 2021 ALTA Loan Policy and CPL.

89. Investors' issuance of the Claim Denial constitutes unfair insurance claim settlement practices and unfair and deceptive acts in violation of Chapters 58 and 75 of the North Carolina General Statutes.

90. Investors willfully engaged in the above-described acts, and was unwarranted in its issuance of the Claim Denial and recent coverage position constituting the basis for this claim despite Cardinal's efforts at resolution.

91. Cardinal has been damaged by Investors' unfair insurance claim settlement practices and unfair and deceptive acts in excess of $75,000.00.

92. Cardinal's damages from Investors' unfair insurance claim settlement practices and unfair and deceptive acts include the amount of its insured losses, including damages for interest, fees, penalties and costs; treble damages pursuant to N.C. Gen. Stat. § 75-16 on the amount of its insured losses; and attorneys' fees for the prosecution of this action.

## FIFTH CLAIM FOR RELIEF
### (Breach of Contract–Shope Krohn)

93. Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 92 of the complaint.

94. Cardinal provided Closing Instructions to Shope Krohn. The Closing Instructions required Shope Krohn to ensure compliance with "any and all requirements of the presence and use of attorneys in the mortgage loan and closing process" and "verification of the identity of the Borrower(s)." The Closing Instructions also required Shope Krohn to ensure the issuance of a title insurance policy that insured the security instrument in first lien position. Further, the Closing Instructions required Shope Krohn to "ensure the closing documents are executed by all parties on or after the document date."

95. Shope Krohn signed the Closing Instructions agreeing to be bound by them and "attest[ed], certify[ied] and declar[ed]", among other things, that all conditions and requirements were properly met and that it would return a copy of the title insurance policy for the transaction.

96. In its coverage correspondence, Investors has asserted that Cardinal is not due coverage under a 2021 ALTA Loan Policy because the requirements listed in the Title Commitment were not met.

97. While Cardinal disputes Investors' characterization regarding the fulfillment of the Title Commitment requirements, to the extent the Court determines that title insurance coverage is not afforded to Cardinal due to a failure to comply with the conditions of the Title Commitment, any such non-compliance with the Title Commitment conditions constitutes a breach of the Closing Instructions.

98. To the extent Shope Krohn did not ensure the satisfaction of the conditions of the Title Commitment, such a breach of the Closing Instructions constitutes a harm and damage to

Cardinal and caused Cardinal to fund a loan in the amount of $510,000 with no bona fide borrower or collateral.

### SIXTH CLAIM FOR RELIEF
**(Professional Negligence/Breach of Fiduciary Duty–Shope Krohn)**

99. Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 98 of the complaint.

100. Cardinal provided Closing Instructions to Shope Krohn and signed the Closing Instructions agreeing to be bound by them.

101. The Closing Instructions required Shope Krohn to ensure compliance with "any and all requirements of the presence and use of attorneys in the mortgage loan and closing process" and "verification of the identity of the Borrower(s)." Further, the Closing Instructions required Shope Krohn to "ensure the closing documents are executed by all parties on or after the document date."

102. In addition to the contractual duties created by the Closing Instructions, Shope Krohn, as Cardinal's attorney with respect to the closing, owed a fiduciary duty to Cardinal to render its professional services in a skillful and prudent manner.

103. Based on the sworn affidavits from Charles J. Strauss and Mary K. Strauss, Shope Krohn did not communicate with the Strausses, did not disburse funds to the Strausses and did not verify that the Strausses signed the loan documents.

104. Further, Cardinal expected Shope Krohn to preside over the closing and verify that the Deed of Trust was properly executed by the borrowers, as required by the Closing Instructions.

105. Given that the Deed of Trust was executed in Paulding County, Georgia, Shope Krohn did not conduct the closing in its offices and did not personally witness the execution of the documents.

106. Because Shope Krohn failed to ensure that the loan documents were properly executed, Cardinal does not have an enforceable loan or debt obligation as intended and Shope Krohn has introduced uncertainty regarding Cardinal's title insurance coverage.

107. Further, Investors contends that it did not receive the title insurance premium payment or a final attorney's certification. To the extent the Court finds Investors' assertions to be correct, Shope Krohn further breached its obligations to Cardinal and introduced doubt as to Cardinal's title insurance coverage.

108. In signing the Closing Instructions, Shope Krohn "attest[ed], certify[ied] and declar[ed]", among other things, that all conditions and requirements were properly met for Cardinal to fund the Loan.

109. Based on the Strausses' sworn statements, this certification and representation by Shope Krohn was false. This false statement by Shope Krohn also constitutes a breach of the fiduciary duty owed to Cardinal.

110. Shope Krohn knew or should have known that Cardinal would rely on the certification by Shope Krohn to fund the $510,000.00 loan.

111. Shope Krohn's failure to use reasonable care and diligence and its failure to exercise its best judgment in attending to the closing of the Loan, has harmed Cardinal.

## **JURY DEMAND**

112. Plaintiff, Cardinal Financial Company, LP d/b/a Sebonic Financial, hereby demands a trial by jury as to all issues triable thereby in the above-captioned action.

**WHEREFORE**, Cardinal prays this Court that:

1. Cardinal obtain a judgment declaring that it is entitled to the indemnification and coverage paid for and afforded by Investors pursuant to the Title Policy, CPL and related coverage documents; and

2. Cardinal recover a monetary judgment against Investors, including all insured losses and actual, consequential and statutory damages stemming from Investors' failure to fulfill its obligations under the Title Policy and related coverage documents, trebled pursuant to North Carolina General Statute § 75, attorneys' fees and costs incurred by Cardinal in connection with the claim; and

3. Cardinal recovers interest, costs and expenses of this action including attorneys' fees from Investors;

4. Cardinal recover a monetary judgment against Shope Krohn for Cardinal's actual and consequential losses due to Shope Krohn's breach of contract, professional negligence and breach of fiduciary duties; and

5. Cardinal be granted such other and further relief as the Court may deem just and proper.

This the 13th day of August, 2025.

**BRADLEY ARANT BOULT CUMMINGS LLP**

/s/ Maria Carisetti
Maria Carisetti (NC Bar No. 57843)
214 N. Tryon Street, Suite 3700
Charlotte, NC 28202
Tel: (704)338-6000
Fax: (704)332-8858
mcarisetti@bradley.com
*Attorneys for Plaintiff*