IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00616-KDB-UMJ

| | |
|---|---|
| CARDINAL FINANCIAL COMPANY, LP, <br><br> Plaintiff, <br><br> v. <br><br> INVESTORS TITLE INSURANCE COMPANY, ET AL., <br><br> Defendants. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendant Investors Title Insurance Company's ("Investors Title") Motion to Dismiss (Doc. No. 12), Third-Party Defendant Merrilee Anderson's Motion to Appoint Counsel (Doc. No. 24) and Motion for Extension of Time to Answer (Doc. No. 29), and Consent Motion to Amend/Correct Amended Complaint as to Lawyers Mutual by Defendant Shope Krohn Attorneys at Law ("Shope Krohn") (Doc. No. 28). The Court has carefully considered these motions and the parties' briefs and exhibits. For the reasons discussed below, the Court will in part **GRANT** and in part **DENY** the motions as follows.

        **I.**      **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). Investors Title moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

1

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp.*, 550 U.S. at 570; *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Also, in analyzing a Rule 12 motion, a court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In particular, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint ... so long as the authenticity of these documents is not disputed." *Chapman v. Asbury Auto. Grp., Inc.*, No. 3:15 cv 679, 2016 WL 4706931, at *1, 2016 U.S. Dist. LEXIS 121043 (E.D. Va. Sept. 7, 2016) (quoting *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir.

2006)); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159 (4th Cir. 2016). So, here, the Court will consider the contract at issue along with the other documents attached to the pleadings.

## II. FACTS AND PROCEDURAL HISTORY

This dispute arises in connection with a real estate fraud scheme spanning several states and numerous companies and individuals, all of whom either seek to place the responsibility for the $500,000+ loss on someone else, decline to provide insurance coverage related to the loss, claim to be a victim of the scheme or cannot be found. In the common parlance of the tv drama it could rival, it is "a lot."

In the fall of 2024, Cardinal Financial Company, LP agreed to lend $510,000 to Charles J. Strauss ("Strauss"), secured by a first priority deed of trust on his property at 17019 Hedgerow Park Road, Charlotte, NC 28277 (the "Property"). (Doc. No. 1 at ¶¶ 7–8). Investors Title was chosen to provide title insurance for the loan. In connection with the Strauss transaction, Investors Title issued an ALTA Closing Protection Letter (the "CPL") (Doc No. 1-3) and a Commitment for Title Insurance to Cardinal (the "Commitment") (Doc. No. 1-2). The CPL identified Shope Krohn as the approved attorney to handle the closing and expressed Investors' agreement to "indemnify [Cardinal] for actual loss of Funds incurred by You in connection with the closing of the Real Estate Transaction conducted by the Issuing Agent, Approved Settlement Provider, or Approved Attorney." (Doc. No. 1-3). Pursuant to the CPL, Cardinal provided instructions to Shope Krohn, including a provision which stated that "the Agent must ensure the Loan Documents conform to Applicable Law with respect to: … (4) Verification of the identity of the Borrower(s)… ."

On October 28, 2024, a Deed of Trust securing the $510,000 loan was purportedly executed by Charles and Mary Strauss in Paulding County, Georgia, before notary Wanda H. Wingfield.[1] Cardinal provided copies of Charles and Mary Straus drivers' licenses and the Deed of Trust to Shope Krohn. (Doc. No. 17 at ¶ 15). On November 7, 2024, Cardinal funded the loan, and Shope Krohn recorded the deed of trust on the Property. (Doc. No. at 1 ¶¶ 19-20; Doc. No. 1-5). In connection with the closing, Shope Krohn signed a certification stating that "[a]ll conditions and requirements have been properly met" and that it would "return a digital copy of the clear 2006 ALTA Short Form Title Policy for this transaction." Shope Krohn wired the net proceeds to a Wildflower Realty, LLC ("Wildflower") bank account at Fifth Third Bank, an account provided by Cardinal to Shope Krohn, after recording the Deed of Trust. (Doc. No. 17 at ¶ 16). On November 8 and 14, 2024, Merrilee Anderson, the "manager/member" of Wildflower, wrote hundreds of thousands of dollars of checks from Wildflower's bank account that emptied the account, which is now closed. (*Id*. at ¶¶ 26-29).

The scheme unraveled in December 2024 when the real Charles Strauss contacted the North Carolina Department of Justice to complain about fraudulent activity related to the $510,000 Loan secured by a deed of trust on his property. Charles J. Strauss and Mary K. Strauss have attested that neither authorized a loan or a lien against their Property, did not receive any of the funds from the Loan closing, did not communicate with plaintiff, did not sign a Deed of Trust, that they were not in Paulding County, Georgia when the Deed of Trust was purportedly signed,

---

[1] Ms. Wingfield is not a defendant in this action. Apparently, the perpetrators of the fraud purchased a notary stamp with Wingfield's name from an unknown source (referenced in this action as "ABC Corporation") and have been impersonating Wingfield since at least June 2023. In addition to this transaction, Wingfield's notary stamp has been used to acknowledge signatures of putative borrowers in Georgia, Alabama, Florida, California, Tennessee, Michigan, Mississippi, and California, and she is a defendant in 13 lawsuits related to its use. (*See* Doc. No. 17 at ¶¶ 30-36).

and did not appear before the notary on the Deed of Trust. (Doc. No. 1 at ¶¶ 23-24). On June 4, 2025, Cardinal filed a Deed of Trust Release and Discharge against Charles Strauss and Mary Strauss.

Cardinal filed this lawsuit on August 13, 2025,[2] against Investors Title and Shope Krohn asserting claims for declaratory judgment, breach of contract (as to the CPL), bad faith and unfair or deceptive trade practices ("UDTP") under N.C. Gen. Stat. § 75-1.1 against Investors Title and breach of contract and professional negligence/breach of fiduciary duty against Shope Krohn. Investors Title has moved to dismiss all of Cardinal's claims. (Doc. No. 12). Shope Krohn has answered the Complaint and asserted third party claims against Merrilee Anderson, Wildflower, Lawyers Mutual Liability Insurance Company of North Carolina, John or Jane Doe and ABC Corporation as well as a Counterclaim against Cardinal (claiming that Cardinal had a non-delegable duty to properly identify the borrowers). Ms. Anderson, a 74-year-old resident of Michigan, has not yet answered the Complaint, but alleges that she is the "victim of a romance cyber scam" and requests that the Court appoint counsel to represent her because she doesn't have funds to pay an attorney. (*See* Doc. No. 24). With respect to Shope Krohn's claims against Lawyer's Mutual, the parties have consented to Shope Krohn filing an Amended Third Party Complaint. (Doc. No. 28). The motions are all ripe for the Court's ruling.

---

[2] This is not the only action filed related to this fraud. On September 22, 2025, Shope Krohn filed a complaint in Forsyth County, North Carolina, captioned Shope Krohn Attorneys at Law, P.A. v. John Doe and Jane Doe, 25CV01186-330 ("the John Doe lawsuit"). The current status of that action is unknown and, as discussed above, Shope Krohn has asserted its own claims in this lawsuit.

### III.     DISCUSSION

A.     **Investors Title's Motion to Dismiss**

   1.     **Breach of Contract (CPL)**

In its breach of contract claim, Cardinal alleges that Investors Title had an obligation to under the CPL to "indemnify [Cardinal] for actual loss of Funds incurred by [Cardinal] in connection with the closing of the Real Estate Transaction conducted by the…Approved Attorney."  *See* Doc. No. 1-3 at p. 2. Specifically, Cardinal claims it is entitled to indemnity based on item No. 4:

> Your loss is **solely caused** by:
>
> a.   a failure of the…Approved Attorney to comply with Your written closing instructions that relate to: … (i)(b) the validity, enforceability, or priority of the lien of the Insured Mortgage…

Doc. No. 1-3 at p. 3 (emphasis added). It then argues that the Complaint clearly alleges that Shope Krohn, the "Approved Attorney," failed to follow Cardinal's closing instructions and that failure is the sole cause of Cardinal's loss. *See* Doc. No. 1 at ¶ 43.

Investors Title asserts that there is no obligation under the CPL because it contains an express Exclusion for the type of fraudulent activity which led to this claim:

> 2.     The Company is not liable under this letter for any loss arising from any:
>
> f. fraud, theft, dishonesty, misappropriation by anyone other than the Company, Issuing Agent, Approved Settlement Provider or Approved Attorney.
>
> n. wire fraud, mail fraud, telephone fraud, facsimile fraud, unauthorized access to a computer, network, email or document production system, business email compromise, identity theft or diversion of Funds to a person or account not entitled to receive the Funds…

(Doc. No. 1-3 at pp. 4–5). The Court agrees.

Even if the CPL is analyzed as an insurance policy, which the Court need not decide, "[a]n insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *C. D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326 N.C. 133, 142 (1990). Courts apply general contract interpretation rules when interpreting an insurance policy. *Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295 (2020). For example, as in other contracts, the objective of construction of terms in an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued. *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354 (1970).

As discussed above, the governing test on a motion to dismiss is whether the Complaint states a claim to relief that is "plausible." The standard of "plausibility" is generous, but it is not unbounded. Here, Cardinal's only response to the applicability of the exclusion for loss caused by the fraud of a third-party is that it has alleged that Shope Krohn's conduct was the "sole cause" of the loss and therefore is outside the exclusion. So, the question before the Court is whether that factual allegation is plausible. It is clearly not. While the closing attorney's negligent conduct may have permitted the fraud to be successful (which Shope Krohn denies), in the absence of the forgery of the loan request and documentation; that is, the underlying fraud, there would have been no loss or loan at all. Therefore, it is not plausible that Shope Krohn's conduct was the "sole" cause of the loss. Accordingly, the exception for third-party fraud applies and Investors Title is entitled to the dismissal of Cardinal's claim that it breached the CPL.

> 3. **Declaratory Judgment (Requiring Investors Title to issue Title Policy)**

In addition to its breach of contract claim, Cardinal alleges that Investors Title has an obligation to issue the promised title policy based, at least in part, on the "Approved Attorney's" certification that "[a]ll conditions and requirements have been properly met" and that it would

7

"return a digital copy of the clear 2006 ALTA Short Form Title Policy for this transaction." Doc. No. 1 at ¶ 38; Doc. 1-4, at 6. Investors Title moves to dismiss this claim arguing that several of the requirements to issue a title policy have not been met, including Receipt of Attorney's Final Certificate, along with all additional required documents. *See* Doc. No. 1-2 at 6; Doc. No. 1-7 at 3. On this claim, the Court agrees with Cardinal.

Cardinal has alleged that all of the requirements for the issuance of the title policy were satisfied. Doc. No. 1 at ¶¶ 33-38. Cardinal allegedly accepted Investors' offer to insure, satisfied the requirements, the Approved Attorney certified and attested to the fulfillment of the requirements and thus, according to Cardinal, coverage was bound. Investors Title disputes those facts, but at this stage of the litigation, the Court must accept Cardinal's pled facts as true, where they could plausibly lead to liability. Based on, at a minimum, Shope Krohn's certification that all requirements had been met and statement that the title policy would be sent to Cardinal, the Court finds Cardinal has stated a plausible claim. Therefore, the motion to dismiss will be denied as to Cardinal's claim for a declaratory judgment.

### 4. Bad Faith and UDTP Claims

The Court will also allow Cardinal's bad faith and UDTP claims to survive at this early stage of the lawsuit. While the Court agrees with Investors Title that Cardinal will ultimately be required to make a substantial showing beyond a breach of contract or a reasonable disagreement over insurance coverage to establish a bad faith or a UDTP claim, accepting Cardinal's allegations as true, together with all permissible inferences, the Court declines to dismiss those claims now as a matter of law. Rather, the Court will consider the viability of the claims closely at Summary

Judgment with the benefit of a full factual record following discovery (unless the Parties resolve this dispute sooner).[3]

B.  **Other Motions**

The remaining motions before the Court can be quickly resolved. Ms. Anderson's Motion to Appoint Counsel, Doc. No. 24, will be denied. While the Court is sympathetic to any litigant who cannot afford counsel, there is no statute or program authorizing the Court to provide counsel to a civil defendant. However, the Court will grant her Motion for Extension of Time to Answer, Doc. No. 29, extending her time to Answer or otherwise respond to the Complaint to March 9, 2026. Shope Krohn's Consent Motion to Amend/Correct Amended Complaint as to Lawyers Mutual, Doc. No. 28, will be granted in the absence of an objection.

IV.  **ORDER**

**NOW THEREFORE IT IS ORDERED THAT:**

1. Investors Title's Motion to Dismiss, Doc. No. 12, is in part **GRANTED** and in part **DENIED** as described above**;**

2. Merrilee Anderson's Motion to Appoint Counsel, Doc. No. 24, is **DENIED**;

3. Merrilee Anderson's Motion for Extension of Time to Answer, Doc. No. 29, is **GRANTED** and her time to Answer or otherwise respond to the Complaint is extended to March 2, 2026;

4. Shope Krohn's Consent Motion to Amend/Correct Amended Complaint as to Lawyers Mutual, Doc. No. 28, is **GRANTED**; and

---

[3] It is the Court's intention to consider including in the Case Management Order an order directing the Parties to conduct an early mediation prior to full discovery. The Parties should address that possibility in their initial attorneys' conference and subsequent proposed case management schedule.

5. This case shall proceed forward towards a trial on the merits on the remaining claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 9, 2026

Kenneth D. Bell
United States District Judge

10

Case 3:25-cv-00616-KDB-UMJ   Document 30   Filed 02/09/26   Page 10 of 10