# EXHIBIT C

**LAWYERS MUTUAL LIABILITY INSURANCE COMPANY OF NORTH CAROLINA**
*(A mutual insurance company, herein called the Company)*

Upon payment of premium and deductibles when due, and subject to all other provisions, terms, exclusions, and conditions of this **Policy**, including endorsements, the Company agrees with each **Insured** as follows**:**

**INSURING AGREEMENT**

**I. Coverage – Attorney**

The Company agrees to pay on behalf of an **Insured** all sums that such **Insured** shall become legally obligated to pay as money damages as compensation for actual monetary loss, subject to the applicable policy limit and deductible, caused by any act(s) or omission(s) of any **Insured** in the rendering of or failing to render **legal services** on or after the **prior acts date** of such **Insured**, with respect to a **claim first made** and **reported to the Company** during the **policy period**, and to which this **Policy** applies.

**II. Coverage – Fiduciary**

The Company agrees to pay on behalf of an **Insured** all sums that such **Insured** shall become legally obligated to pay as money damages as compensation for actual monetary loss, subject to the applicable policy limit and deductible, caused by any act(s) or omission(s) of any **Insured**, on or after the **prior acts date** of such **Insured**, with respect to a **claim first made** and **reported to the Company** during the **policy period** and to which this **Policy** applies, in the performance of duties to others that are imposed on any **Insured** in his or her capacity as:

    (a)   the personal representative of an estate, other than an estate of which such **Insured** or a member of the **family** of such **Insured** is a beneficiary;

    (b)   the trustee of any deed of trust, other than a deed of trust in which such **Insured** or a member of the **family** of such **Insured** has a direct financial interest;

    (c)   a court-appointed trustee in bankruptcy, a court-appointed conservator, receiver, collector or guardian, other than as a fiduciary for such **Insured** or a member of the **family** of such **Insured**;

    (d)   a notary public, other than where the acknowledgement or attestation has not been performed according to the governing notary statute; or

    (e)   a trustee or escrow agent, acting under written agreement, holding assets for the direct or indirect benefit of a person or persons other than such **Insured**, or a member of the **family** of such **Insured**, or a business enterprise in which such **Insured** or **family** member(s) of such **Insured** hold in the aggregate a fifteen percent (15%) or more interest, whether legal, equitable, or in combination.

This coverage shall not apply to any legal liability caused in whole, or in any part, by act(s) or omission(s) of any **Insured** in a fiduciary capacity who was not at the time of such act(s) or omission(s) both actively engaged in the private practice of law as a primary occupation, and duly licensed to practice law; and in no event shall coverage apply in any respect to **claims** against any **Insured** for damages which are alleged to have resulted from failing properly to hold or disburse funds other than funds held or disbursed as an adjunct to the performance of **legal services** as described in **INSURING AGREEMENT I. Coverage – Attorney**, subject, however, to the limitations described in Exclusion (r).

**III. Coverage – Arbitrator & Mediator**

The Company agrees to pay on behalf of an **Insured** all sums that such **Insured** shall become legally obligated to pay as money damages as compensation for actual monetary loss, subject to the applicable policy limit and deductible, caused by any act(s) or omission(s) of any **Insured,** on or after the **prior acts date** of such **Insured**, with respect to a **claim first made** and **reported to the Company** during the **policy period**, while in his or her capacity as an arbitrator or mediator and duly licensed to practice law, and to which this **Policy** applies.

**IV. Additional Benefits**

Payments made pursuant to this section will not be subject to the deductible and will not reduce the limit of liability or aggregate set forth in the **Declarations**. The amount payable under this section shall not exceed a **Policy** aggregate of $5,000:

    (a)   Per Diem – The Company will pay each **Insured** $500 for each day or part of a day that the **Insured's** attendance at a trial, arbitration, hearing, mediation or deposition is requested by the Company.

    (b)   Subpoena Assistance – The Company will provide counsel to represent an **Insured** who receives a subpoena to produce documents and/or provide testimony related to act(s) or omission(s) in the provision of **legal services** if such **legal services** were provided after the **prior acts date** of such **Insured**, and the subpoena is issued during the **policy period** or any **extended reporting period**, provided such **Insured** has not been retained and is not being requested by a party to provide expert testimony in connection with the **suit** or proceeding in which the subpoena has been issued.

    (c)   **Disciplinary Proceeding** – The Company will reimburse an **Insured** for legal fees and expenses incurred and paid to an attorney representing such **Insured** as a result of a **disciplinary proceeding** related to act(s) or omission(s) in the provision of **legal services** on or after the **prior acts date** of such **Insured**, and which **disciplinary proceeding** was first initiated against such **Insured** and **reported to the Company** during the **policy period** or any **extended reporting period**. The Company will not pay or reimburse an **Insured** for any costs, restitution, penalty or award of any kind or description that result from a **disciplinary proceeding**, nor will the Company reimburse an **Insured** for any legal fees or expenses if: (1) the **Insured** has been convicted of a felony based in whole or in any part upon that conduct

giving rise to the **disciplinary proceeding**; or (2) the proceeding results in discipline of the **Insured** in whole or in any part because of theft, embezzlement, misappropriation, or other unauthorized withdrawal or misapplication of funds.

(d) Pre-Suit Assistance – Until a **suit** is brought, the Company may, in its sole discretion, provide counsel to assist an **Insured** with an act, omission or incident that the **Insured** reports to the Company in accordance with **CONDITIONS III. Notice of Incident, Claim or Suit**.

## V. Defense, Settlement, Supplementary Payments

The Company shall have the right and duty to defend any **suit** against an **Insured** to which this **Policy** applies. The Company shall have no duty to defend, nor shall it be required to defend, any **suit** alleging act(s) or omission(s), or losses, or damages, for which no coverage is provided by this **Policy**, nor shall the Company have any duty to defend, nor shall it be required to defend, any **Insured** who is also insured by any other policy, issued by any other company (whether primary, excess, contingent or otherwise), as provided in **CONDITIONS I. Other Insurance**, which is applicable to the **claim** or **related claims**.

If a **suit** asserts one or more **claims** based upon one or more theories of liability, some of which **claims** or theories of liability are covered by this **Policy**, and some of which are not covered by this **Policy**, the Company shall have no duty to defend, nor shall it be required to defend, any **claims** or any theories of liability that are not covered by this **Policy**; provided, however, the Company may, in its sole discretion, defend any such **claims** or theories of liability, but in so doing, it shall waive none of its rights to withdraw such defense or to deny payment for any **claim** or any theory of liability not covered by this **Policy**.

The Company may make such investigation as it deems appropriate in light of any **claim** or any **suit** and may make such settlement of any **claim** or any **suit** as it deems appropriate, even for a sum totally within the **Insured's** deductible. But the Company shall not be obligated to make any investigation, to enter into the defense of any **suit,** or to pay any **claim** or judgment, after the applicable limit of the Company's liability has been exhausted, whether by settlement, judgment, or in any other manner whatsoever. If the limit(s) of liability are exhausted during the pendency of the Company's handling of any **claim** or defense of any **suit**, the Company shall have the right at that time to cease the handling of any such **claim,** or to withdraw from the further defense of any such **suit**. Provided, however, that if the applicable limit of liability is exhausted during the defense of any such **suit** or during appeal, the Company may, in its sole discretion, continue its defense of any **Insured(s)**, but the Company shall have the right of reimbursement from the **Insured(s)** so defended for all expenses and fees incurred subsequent to the exhaustion of the Company's limit(s) of liability.

The Company and each **Insured** hereby agree: if a **claim** is made or **suit** is brought against any **Insured** which involves assertions or allegations of act(s) or omission(s) within the scope of Exclusion (a) or (b), and if such **Insured** shall submit to the Company an affidavit denying that such **Insured** is responsible for act(s) or omission(s) within the scope of Exclusion (a) or (b), and agrees in writing in a form satisfactory to the Company to reimburse the Company for all costs, expenses and fees incurred in the defense of such **Insured** in the event that it be later adjudicated that such **Insured** is responsible for act(s) or omission(s) within the scope of Exclusion (a) or (b), and secures that agreement with collateral or guaranty satisfactory to the Company, the Company will then make such investigation and provide such defense as would be done if the act(s) or omission(s) were not within the scope of Exclusion (a) or (b). Provided, however, that the Company will have no obligation to investigate or defend if such **Insured** has judicially admitted such act(s) or omission(s), or has been adjudged to have committed such act(s) or omission(s), or has admitted such act(s) or omission(s) in writing to any regulatory agency, board of professional licensing or disciplinary body. The Company shall not be obligated, in any event, to settle a **claim** or **suit** asserting or alleging act(s) or omission(s) within the scope of Exclusion (a) or (b) or to pay any award or judgment based upon such act(s) or omission(s).

## VI. Deductible and Limit of Liability

For purposes of calculating the amount owed by the Company, if any, for any **claim** or **related claims** for which the Company is determined to be liable under this **Policy** and any Extended Reporting Endorsement, the Company's liability shall be either the applicable limit of liability reduced by all **claims expenses**, or such damages as compensation for actual monetary loss for which this **Policy** otherwise provides coverage, <u>whichever is less</u>, minus the deductible amount stated in the **Declarations**, all subject to the **Policy** aggregate.

If the Company, in its sole discretion, advances payment of any amounts within the applicable deductible, or any amounts in settlement or satisfaction of **claims** or judgments or for **claims expenses** in excess of the applicable limit of liability of this **Policy**, each **Insured**, jointly and severally, shall be liable to the Company for any and all such amounts, and immediate payment of such amounts to the Company, upon demand, is an express condition precedent to any further obligation on the part of the Company to provide any coverage, to pay any **claim** or judgment, or to provide or continue the defense of any **Insured** under this **Policy** or any Extended Reporting Endorsement. If payment in full is not received by the Company within the 30 days next following the mailing of written demand by the Company to the address of the **Named Insured** as shown on the most recent **Application** or supplement thereto on file with the Company, all coverage, including but not limited to the defense of **suits** and the obligation to pay on behalf of an **Insured**, ends and this **Policy** expires automatically for failure to satisfy this express condition precedent, and the Company shall have no further obligation to any **Insured** on account of this **Policy**, or any Extended Reporting Endorsement; however, and in any event, the Company shall retain its right to enforce its demand for such reimbursement. The Company may, in its sole discretion, continue its investigation or defense of a **claim** or **suit** where the **Insureds** have not timely or fully paid the Company its demand for reimbursement of the deductible, and such continuation shall in no way be deemed a waiver of its rights under this paragraph.

The deductible amount applies individually to each separate **claim** of two or more **related claims**, except that all **related claims** joined in a single **suit** shall be subject to a single deductible. **Claims expenses** related to the investigation of **related claims** may, in the sole discretion of the Company, be charged against the deductible applicable to any one or more individual **claims** of two or more **related claims**, or apportioned to the **related claims**. Other **claims expenses** shall be charged directly to each **claim** incurring such expenses.

If **claim** is made or **suit** is brought against two or more **Insureds**, and one or more of such **Insureds** insist upon the retention of separate counsel to represent their interests, or the Company deems it advisable or necessary to retain separate counsel for one or more **Insureds**, then each **Insured** or group of **Insureds** receiving representation of such separate counsel shall be subject to pay separate deductible amounts as if the **claim** or **suit** were brought solely against such **Insured** or **Insureds**.

The limit of the Company's liability for **claims expenses** and payment of damages for any individual **claim**, or one or more **related claims**, is the lesser of the amount stated in the **Declarations** as: (1) "Applicable to any **claim** or one or more **related claims**" or (2) "Aggregate limit of the Company's liability for all damages and **claims expenses** without regard to the number of **Insureds**, Extended Reporting Endorsements, **claims**, **suits**, or claimants" ("Aggregate") after such "Aggregate" is reduced by all prior payments and **claims expenses** under the **Policy**. Such "Aggregate" limit of liability is the maximum limit of the Company's liability for all damages and all **claims expenses** without regard to the number of **Insureds**, Extended Reporting Endorsements, **claims**, **suits**, or claimants. For purposes of determining the limit of the Company's liability, damages as compensation for actual monetary loss include such pre-judgment interest, post-judgment interest, costs and fees as may be awarded in a **suit**.

The determination of the Company as to the reasonableness of any **claims expenses** incurred and paid shall be in its sole discretion, and is

IA (07/01/2023)                                                                                    2

conclusive and binding on each **Insured**.

## VII.   Limited Waiver of Deductible for Claims Expenses: Pro Bono Activities, and Court-Appointed Indigent Defense

The Company will pay the first $10,000 of an **Insured's claims expenses** for a **claim** or two or more **related claims** arising out of or related to any act(s) or omission(s) by an **Insured** (1) for gratuitous **legal services** for those who are referred to any **Insured** by a legal services office qualified for funding by the Federal Legal Services Corporation or sponsored by the North Carolina Bar Association, and (2) for **legal services** for an indigent client in criminal proceedings in which the **Insured** was duly appointed to represent the indigent client by a court of competent jurisdiction. Thereafter, all **claims expenses** are subject to the applicable deductible.

## VIII. Policy Territory

This **Policy** applies to act(s) or omission(s) occurring anywhere in the world if, at the time of the act(s) or omission(s), the **Insured** seeking coverage was both engaged in the private practice of law and duly licensed to practice law, provided **suit** is brought within the United States of America or one of its territories or possessions, or in Canada.

## EXCLUSIONS AND LIMITED WAIVER

### I. Exclusions

Irrespective of whether the act(s) or omission(s) alleged in support of a **claim**, **suit**, or theory of liability presented in a **suit**, would fall within **INSURING AGREEMENT**, **I. Coverage** – **Attorney**, **II. Coverage** – **Fiduciary** or **III. Coverage** – **Arbitrator & Mediator**, this **Policy** does not afford to any **Insured** any coverage or benefits whatsoever, including, but not limited to, any right to any defense, with respect to:

(a)   any **claim,** or any theory of liability asserted in a **suit,** based in whole or in any part upon any conduct amounting to a criminal or malicious act(s) or omission(s) of any **Insured**, any employee of any **Insured**, or any independent contractor or other third party for whose conduct any **Insured** is alleged to be responsible, regardless of the nature of the potential criminal penalty and whether there is a criminal prosecution, plea or conviction, including, but not limited to, theft, embezzlement, misappropriation, or other unauthorized withdrawal or misapplication of funds;

(b)   any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon any dishonest or fraudulent act(s) or omission(s) of any **Insured**, any employee of any **Insured**, or any independent contractor or other third party for whose conduct any **Insured** is alleged to be responsible, including, but not limited to, dishonesty, constructive fraud, theft, embezzlement, or other unauthorized withdrawal or misapplication of funds;

(c)   any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon (1) any discrimination by any **Insured**, or any employee of any **Insured**, upon the basis of race, color, creed, national origin, age, sex, marital status, sexual preference or disability, or upon any similar basis declared unlawful by any law, statute, regulation or rule of the United States, any subdivision or state thereof or any other governmental or quasi-governmental entity having jurisdiction or (2) any employer-employee relationship existing at any time between any **Insured** and the claimant (or anyone through whom the claimant asserts rights) or (3) any employment relationship in which the **Insured** was or is an employee of the claimant;

(d)   any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon (1) any bodily injury to, or any sickness, disease, mental anguish or suffering, emotional distress or death of, any person caused in whole or in part by any **Insured** or any employee of any **Insured** or (2) any sexual conduct engaged in by any **Insured** or (3) any damage to or destruction of property caused, in whole or in part, by any **Insured** or (4) any fine, or demand for response, or assessment or remedial action of any kind arising out of or in any way related to any damage to, or pollution, contamination or destruction of, the environment or natural resources;

(e)   any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon any loss sustained by any **Insured** as the beneficiary or distributee of any trust or estate;

(f)   any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon any **Insured's** act(s) or omission(s) as a public official or as a public employee, unless the act(s) or omission(s) occurred during the **Insured's** rendering of **legal services** as a part-time attorney/employee of a governmental body, subdivision or agency. For the purpose of this **Policy**, a part-time attorney/employee of a governmental body, subdivision or agency is an attorney who regularly engages in private law practice other than as an attorney for such governmental body, subdivision or agency, and who regularly maintains a separate law office for the private practice of law;

(g)   any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon any **Insured's** act(s) or omission(s) occurring, in whole or in any part, while such **Insured** is, in any way, or to any extent, acting in his or her capacity as an owner, officer, manager, director, shareholder, member, partner, trustee, employee, or fiduciary (other than as covered by the provisions of **INSURING AGREEMENT II.  Coverage – Fiduciary**) of a business enterprise, regardless of whether for-profit, or of a not-for-profit or charitable organization, or of a pension, welfare, profit-sharing, mutual or investment fund or trust;

(h)   any **claim**, or any theory of liability asserted in a **suit**, seeking recovery for any punitive, exemplary, double, treble or other damages which are in excess of the claimant's actual monetary loss caused by any act(s) or omission(s) of an **Insured** covered by this **Policy**, including, but not limited to, sanctions imposed for any **Insured's** violation(s) of any Rules of Civil Procedure, or any other rule, of any court or other tribunal having jurisdiction, or any other fine, penalty or monetary sanction imposed upon or assessed pursuant to any law, statute, regulation or rule of the United States, any subdivision or state thereof or any other governmental or quasi-governmental entity having jurisdiction;

(i)   any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon the act(s) or omission(s) of any **Insured:**
    (1)   by a member of the **family** of such **Insured**; or
    (2)   by any other **Insured**, or the testamentary or trust estate of any other **Insured**, excepting any **claim** or **suit** that arises out of or is related to **legal services** provided to another **Insured** who is not a member of the **family** of such **Insured**; or
    (3)   by any organization (regardless of whether for-profit or not-for-profit or charitable), or the owners, directors, shareholders, officers, members or managers thereof, which at the time of the act(s) or omission(s) of any **Insured** upon which liability is based, in whole or in any part, was an organization in which any **Insured**, or a member of the **family** of any **Insured**, or of different **Insureds**, or the testamentary or trust estates of such person or persons, together or individually, owned as much as a fifteen percent (15%) interest (whether legal, equitable or in combination), unless such organization is specifically designated in the **Declarations** or endorsement(s) of this **Policy**;

(j)   any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon (1) any act(s) or omission(s) of any **Insured** in

the advertising or marketing of services, or solicitation of clients, or (2) any act(s) or omission(s) of any **Insured** constituting an unfair method of obtaining clients or legal matters for handling, or (3) any act(s) or omission(s) of any **Insured** which is in violation of any law proscribing unfair or deceptive practices or acts in or affecting commerce or in restraint of commerce or services, including, but not limited to, violation of any provision of Chapter 75 of the North Carolina General Statutes, or (4) any **Insured's** act(s) or omission(s) while participating in the operation of any client referral services in which any **Insured** has an economic interest or from which any **Insured** receives any monetary payments;

(k)  any **claim**, or any theory of liability asserted in a **suit**, seeking recovery of any sum as reimbursement for fees or expenses charged by any **Insured**;

(l)  any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon, or related in any way to, the rendering of or failure to render **investment advice**;

(m)  any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon (1) any indemnity obligation created by contract or (2) liability of an **Insured** for contribution or indemnity to any other person or organization insured by this **Policy**;

(n)  any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon act(s) or omission(s) constituting the unauthorized practice of law as such unauthorized practice was at the time of such act(s) or omission(s) defined by the law of the State of North Carolina or by the law of the jurisdiction in which the unauthorized practice of law took place;

(o)  any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon (1) any act(s) or omission(s) or series of related act(s) or omission(s) of any **Insured** occurring or beginning prior to the effective date of this **Policy** if any **Insured** prior to the effective date of this **Policy** knew, or could have reasonably foreseen, that such act(s) or omission(s) might be expected to be the basis of a **claim** or **suit** (or some theory of liability contained in a **suit**), but failed to give the Company written notice of such act(s) or omission(s) prior to the issuance of this **Policy**; or (2) any act(s) or omission(s) or series of related act(s) or omission(s) occurring or beginning prior to the effective date of this **Policy** if there is other insurance applicable to such **claim**, **suit** or theory of liability, whether such other insurance is primary, excess, contingent or otherwise, and whether or not the limits of liability of such other insurance are, or may become, exhausted;

(p)  any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon any liability of any **Insured(s)** to any bank or savings and loan or credit union, or similar institutions, or to the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation, or to depositors whose accounts were insured in whole or in part by those federal insurance programs, or to the Office of Thrift Supervision or the Office of the Comptroller of the Currency or the Resolution Trust Corporation, which liability (1) arises out of, or is any way connected to, any **Insured's** status as a depository institution affiliated party at the time of any act(s) or omission(s) giving rise to such liability or (2) is imposed by virtue of the provisions of the Financial Institution Reform, Recovery and Enforcement Act of 1989 or any amendment thereto. Provided, however, that this Exclusion (p) shall not be applicable to liability caused solely by act(s) or omission(s) of any **Insured** in rendering or failing to render **legal services** as described in **INSURING AGREEMENT I. Coverage – Attorney**;

(q)  any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon any **Insured's** act(s) which are found by a court of competent jurisdiction to have been done in furtherance of the activities of a racketeer influenced corrupt organization as defined by applicable federal or state law at the time of the act(s);

(r)  any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon disbursement by any **Insured**, or any employee or agent of any **Insured**, of funds, checks or other similar instruments deposited to a trust, escrow or other similar account unless such deposit is irrevocably credited to such account;

(s)  any **claim**, or any theory of liability asserted in a **suit**, which seeks any relief or remedy whatsoever other than money damages solely as compensation for actual monetary loss;

(t)  any **claim**, or any theory of liability asserted in a **suit**, against an **Insured** if such **claim** or theory of liability is based solely upon an act(s) or omission(s) of a lawyer with whom an **Insured** shares office space or common facilities if that lawyer is not also an **Insured** under this **Policy**, nor shall this **Policy** provide any coverage whatsoever to any group or association of individual practitioners regardless of the name under which such group or association of individual practitioners carries on the practice of law, if those practitioners are sharing office space with each other, should any such **claim** or theory of liability be based solely upon an act(s) or omission(s) of a lawyer who is not also an **Insured** under this **Policy**;

## II. Limited Waiver of Exclusions

The Company agrees that such insurance as would otherwise be afforded under this **Policy** shall continue as to each individual **Insured** who did not personally commit, or personally participate in committing, or personally ratify or acquiesce in or fail to take all reasonable and necessary actions to stop or minimize harm, after such **Insured** knew, or, in the exercise of reasonable care, should have known, of one or more of the act(s) or omission(s) within the scope of Exclusions (a) or (b) above committed by any **Insured(s)**, if such **Insured** claiming the benefit of this provision has otherwise complied with all the terms and conditions of this **Policy** and, immediately upon receiving knowledge of the act(s) or omission(s) subject to those exclusions, has communicated that knowledge to the Company. This Limited Waiver of Exclusions applies to individual **Insureds** only, and shall not apply to a law firm organization regardless of its form. In no event, however, shall this Limited Waiver of Exclusions apply to any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon act(s) or omission(s) of any employee, independent contractor, or third party.

This Limited Waiver of Exclusions shall be effective only to afford coverage which is in excess of the total amount of all other: (1) applicable and collectible insurance, whether primary, excess, contingent or otherwise; (2) applicable and collectible bonds; (3) applicable and collectible client security funds; (4) the amount actually paid to any claimant pursuant to the provisions of a judgment or order entered in a criminal action arising out of the same act(s) or omission(s), in whole or in part, which give rise to the **claim(s)** or **suit(s)** under the **Policy**; and (5) the amounts to which any person or persons who committed the act(s) or omission(s) described in Exclusions (a) or (b), or ratified or acquiesced therein, or failed to take all reasonable and necessary actions to stop or minimize harm, would have been entitled to have received from the insured organization if such person or persons had been involuntarily dismissed, discharged or expelled from such organization as of the date of the last act(s) or omission(s) giving rise to the **claim(s)** or **suit(s)**.

In no event shall the amount of the coverage afforded pursuant to the provisions of this Limited Waiver of Exclusions exceed the lesser of

(a)  the limits of liability, less any applicable reductions, of any policy previously issued by the Company, (1) which policy was in force and effect at the time of the occurrence of the earliest of the act(s) or omission(s) within the scope of Exclusions (a) or (b) giving rise to the **claim(s)** or **suit(s)**, or (2) which was in force and effect at the time that the Company, pursuant to provisions of such policy, should have been advised of the act(s) or omission(s) which could have then been reasonably expected to be the basis of a **claim** or **suit**, but was not then **reported to the Company** by virtue of concealment by one or more **Insureds** under the provisions of the earlier policy, or

(b)  the applicable limit of liability of this **Policy**.

As a condition precedent to any **Insured** claiming the benefit of this Limited Waiver of Exclusions, the **Insured** must have immediately notified the North Carolina State Bar of the act(s) or omission(s) of the nature described in Exclusions (a) or (b) above and must have cooperated

fully with the North Carolina State Bar in its investigation of the same.

Whenever the Company shall make payment on behalf of any **Insured(s)** pursuant to the provisions of this Limited Waiver of Exclusions, the Company shall be subrogated to the extent of its payment to the rights of any **Insured(s)** against those persons whose act(s) or omission(s) of the nature described in Exclusions (a) or (b) above gave rise to the **claim** or **suit** for which payment is made. The **Insured(s)** on behalf of whom payment is made shall do nothing to impair such subrogation rights of the Company, and shall do everything necessary to preserve those rights of subrogation and to enable the Company to effectively exercise such rights. The Company shall be entitled to full reimbursement of its subrogated interest before any **Insured(s)** shall be entitled to any part of any recovery from any person whose act(s) of omission(s) of the nature described in Exclusions (a) or (b) gave rise to any **claim** or **suit** for which payment was made by the Company.

## DEFINITIONS

Any word or phrase appearing in this **Policy** in bold print, whether using capital letters or lower case or in the plural or singular, shall have the meaning as defined below:

(a) **"Application"** means:
The initial application submitted by the **Named Insured** for purposes of inducing the Company to issue this **Policy** for this **policy period** and all amended applications or supplemental information submitted by an **Insured** to the Company for purposes of inducing the Company to issue, modify and/or continue this **Policy** for this **policy period**.

(b) **"Claim"** means:
A demand for monetary relief, whether or not presented in a **suit**, based in whole or in part upon alleged act(s) or omission(s) of an **Insured**.

(c) **"Claims expenses"** means:
(1) Fees charged by any attorney(s) engaged by the Company on behalf of any **Insured**; and
(2) All other fees, costs and expenses resulting from the investigation, adjustment, defense or appeal of a **claim** or a **suit** (including any such fees, costs and expenses resulting from any act(s), omission(s), or event(s) which could reasonably be expected to be the basis of a **claim** or **suit**), or any proceeding arising in connection therewith, if incurred by the Company, or by an **Insured** with written consent of the Company; provided, however, that **claims expenses** do not include salary, charges or expenses of regular employees or officials of the Company.

(d) **"Claim first made"** means:
A **claim** is deemed first made as to all **Insureds** at the earliest of the following:
(1) Any **Insured** becoming aware of any act(s), omission(s), or incident(s) which could reasonably be expected to be the basis of a **claim** or **suit** covered by this **Policy**; or
(2) A claimant notifying an **Insured** of a **claim** against any **Insured** covered by this **Policy**; or
(3) A **suit** being filed against any **Insured** covered by this **Policy**.
All **related claims** are deemed first made when the earliest **claim** of such **related claims** is first made. When a **claim** is made during an **extended reporting period**, it shall be deemed to have been first made during the period of the immediately preceding **Policy** and subject to the conditions of such **Policy**.

(e) **"Declarations"** means:
The page or pages issued and provided with the **Policy** and labeled **"Declarations,"** and including information such as the identification of the **Named Insured**, the Limits of Liability, the **Policy** Aggregate, the applicable Deductible, and **Policy** endorsements.

(f) **"Disciplinary proceeding"** means:
A grievance, complaint or inquiry to or by the North Carolina State Bar or a proceeding arising from or in response to a grievance, complaint, or inquiry by the North Carolina State Bar and arising out of an **Insured's** act(s) or omission(s) in the rendering of or failure to render **legal services**.

(g) **"Extended reporting period"** means:
The period of time, as specified in any Extended Reporting Endorsement issued for this **Policy**, after the end of the **policy period** for reporting a **claim** or **suit** based on act(s) or omission(s) after the **prior acts date** and prior to the end of the **policy period**.

(h) **"Family"** means:
Spouse, child, parent, grandparent, grandchild, and siblings including in-law, step, foster and half relationships.

(i) **"Insured"** means:
(1) If the **Named Insured** designated in the **Declarations** is an individual, the person so designated in the **Declarations**, but only with respect to the conduct of a law practice of which the individual is a sole proprietor;
(2) If the **Named Insured** designated in the **Declarations** is a partnership, the partnership so designated in the **Declarations** and any lawyers named in the **Application** who are partners thereof;
(3) If the **Named Insured** designated in the **Declarations** is a professional corporation, professional association, professional limited liability partnership or professional limited liability company, the corporation, association, partnership or company so designated in the **Declarations** and any lawyers named in the **Application** who are stockholders, partners or members thereof;
(4) Any lawyer who is a regular employee of the **Named Insured** and who is named in the **Application**;
(5) Any lawyer who was a stockholder, partner, member or employed lawyer of the **Named Insured** at the time of the act(s) or omission(s) that are the subject of the **claim** or **suit**, but only to the extent that such act(s) or omission(s) were within the scope of and in furtherance of duties for the **Named Insured**;
(6) Any non-lawyer employee of the **Named Insured** at the time of the act(s) or omission(s) that are the subject of the **claim** or **suit**, but only to the extent that such act(s) or omission(s) were within the scope of and in furtherance of duties for the **Named Insured**;
(7) The personal and legal representatives of any **Insured** in the event of such **Insured's** death, incapacity or bankruptcy.

Except as provided in subsections 5, 6 and 7 of this definition section (i), no person or organization shall be insured by this **Policy** unless such person or organization is named in the **Application** or in a timely supplement thereto, and at the time of the act(s) or omission(s) alleged to have given rise to any **claim** or **suit**, such person or organization maintained his, hers, or its principal professional offices within the State of North Carolina. However, this requirement as it relates to a principal professional office location shall not apply to a person who has been

named in the **Application** for the first time after the date of an act(s) or omission(s) of another person who is insured by this **Policy** which gives rise to a **claim** or **suit**. Any addition to or deletion from the list of lawyers in the **Application** must be **reported to the Company** within 30 days of the addition or deletion, or by the cancellation date or expiration date of the **Policy**, if such cancellation date or expiration date occurs sooner than 30 days next following such addition or deletion. Any addition to the list of lawyers shown on the **Application** will require the payment of an additional prorated premium for the current **policy period**. Any deletion will result in a prorated refund of premium.

(j) **"Investment advice"** means:

Advice or judgment with respect to the offering, promoting, suggesting, recommending, selling, buying or retaining any investment (including, but not limited to, real estate, negotiable instruments, securities, precious metals, jewels or any other investment vehicle) which includes any opinion or representation of any kind or degree related to the quality, security, safety, desirability, potential profitability or otherwise with respect to the advisability (or lack thereof) of investing or divesting, or as to any advisor or consultant with respect thereto. Provided, however, **investment advice** shall not be interpreted to include **legal services** with respect to the types of investments that a client who is a fiduciary may legally consider as allowed by a contract, will, trust or other instrument, or statute or other applicable law, or the use of any consultant or advisor with respect thereto. Provided further that **investment advice** shall not be interpreted to include **legal services** with respect to the interpretation or understanding of a statute, rule or regulation, or a contract, will, trust or other instrument, regarding the investments that may be described therein, or the legal status of any consultant or advisor with respect thereto.

(k) **"Legal services"** means:

Only professional **legal services** provided by an **Insured**, while engaged in the private practice of law, duly licensed to practice law, and acting solely for some person or organization other than himself or herself.

(l) **"Named Insured"** means:

The individual(s), person(s) or organization designated in the **Declarations** attached to and forming a part of this **Policy**, and any **predecessor firm**.

(m) **"Policy"** means:

This agreement along with the **Declarations** and all endorsements.

(n) **"Policy period"** means:

The period of time between the effective date in the **Declarations** and the date of termination, expiration or cancellation of coverage, and specifically excludes any **extended reporting period** or periods.

(o) **"Predecessor firm"** means:

Any law firm organization to whose financial assets and liabilities the **Named Insured** is the majority successor in interest.

(p) **"Prior acts date"** means:

The date shown in the **Declarations** or Prior Acts Date Endorsement for that **Insured**. For any person or organization qualifying as an Insured under subsections 5 and 6 of the definition of "**Insured,**" the **Prior Acts Date** of the **Named Insured**.

(q) **"Related claims"** means:

A **claim** is deemed related if it is based in whole or in any part on the same alleged act(s) or omission(s), or series of act(s) or omission(s), or is connected by any common circumstance, transaction, incident, advice, or decision in the rendering of or failure to render **legal services**, regardless of the number of **Insureds**, **claims**, **suits**, or claimants.

(r) **"Reported to the Company"** means:

Written notice sent by an **Insured** to, and actually received by, the Company at its offices: 1001 Winstead Drive, Suite 285, Cary, North Carolina 27513.

(s) **"Suit"** means:

A civil action filed in any court, or an arbitration proceeding.

## CONDITIONS

### I. Other Insurance

If this **Policy** and any other policy or policies issued by the Company provide coverage to an **Insured** with respect to a **claim**, or two or more **related claims**, the Company's maximum liability for such **claim** or **related claims** shall not exceed the limit of liability per **claim** or **related claims** specified in that policy having the highest limit of liability available among all such policies, less the **claims expenses** incurred. In such an event, the applicable deductible shall be the highest deductible of the applicable polices. The deductible shall be allocated among each applicable policy in equal shares, until the applicable deductible under each policy is satisfied, or the total deductible payments equal the amount of the highest deductible, whichever first occurs. The allocation of those monetary damages paid and **claims expenses** incurred in excess of the highest deductible among each applicable policy shall be on a pro rata basis in proportion to the limit of liability stated in each applicable policy for each **claim** or **related claims**.

If an **Insured** has any other liability insurance coverage (whether primary, excess, contingent or otherwise) provided by one or more other policies issued by one or more other insurance companies with respect to a **claim**, or two or more **related claims**, with respect to which this **Policy** would otherwise provide coverage, then, and in that event, this **Policy** shall provide no coverage, nor any duty to defend, with respect to such **claim** or **related claims**, and the Company shall have no liability with respect thereto.

If there are one or more other policies issued by one or more other companies (whether primary, excess, contingent or otherwise) that provide liability insurance coverage to an **Insured** with respect to a **claim**, or **related claims**, for which coverage would otherwise be provided by the Company except for the preceding paragraph, and, under the particular facts, circumstances and policy language, the preceding paragraph is held to be ineffective to eliminate coverage by the Company, and such other policy or policies are determined to provide coverage on the same basis as provided by the Company (e.g. primary, excess, contingent or otherwise), then the Company shall not be liable to pay any amount exceeding the covered portion of the loss multiplied by the ratio of the Company's maximum liability (computed in the manner prescribed hereinabove as if there were no other coverage); and if the Company's coverage is provided by multiple policies, it shall be limited in amount, and prorated among the Company's policies, as provided in the first paragraph of this section, **CONDITIONS I. Other Insurance**, to the sum of (1) the total of all other available coverage provided by such other companies (whether primary, excess, contingent or otherwise) and (2) such maximum liability; and any amount so payable shall be reduced by the **claims expenses** incurred and shall be subject to the applicable deductible(s).

Notwithstanding any provision to the contrary set out hereinabove, the most the Company shall be required to pay, under any circumstances, on behalf of any one or more **Insureds** with respect to any **claim**, or any two or more **related claims**, is the limit of liability as determined in the **INSURING AGREEMENT VI. Deductible and Limit of Liability** (or, if the Company's coverage is provided through

multiple policies, as determined for all such policies by the first paragraph of this section, **CONDITIONS I**. **Other Insurance**) and, in any event, the Company shall have no duty to defend any **Insured** who is also insured by any other policy issued by any other company (whether primary, excess, contingent or otherwise) which is applicable to the **claim** or **related claims** and which provides for a defense of such **Insured**. With respect to the coverage provided by the Company under the **INSURING AGREEMENT II. Coverage** – **Fiduciary**, the Company's maximum liability for the payment of any loss, as otherwise limited pursuant to this paragraph, shall be further reduced by all applicable bonds, security funds or other similar sources of reimbursement or indemnity, as well as any amounts paid as restitution voluntarily or by compulsion of court order or judgment or mandate of the North Carolina State Bar.

## II. Extended Reporting Endorsement

(a)   Mandatory Endorsement

In the event of a cancellation permitted by G.S. §58-41-15 or nonrenewal effective under G.S. §58-41-20, or the Company elects not to issue a new policy, there shall be a 30-day period after the effective date of the cancellation or nonrenewal or election not to issue a new policy during which the **Named Insured** may elect to purchase coverage for an **extended reporting period**.

The limits of liability in the aggregate for the **extended reporting period** shall be one hundred percent (100%) of the expiring **Policy** aggregate that was in effect at the inception of the **Policy**, which aggregate shall thereafter be reduced during the **extended reporting period** by such amounts as would reduce the **Policy** aggregate during the **policy period** under **INSURING AGREEMENT VI. Deductible and Limit of Liability**.

Within 45 days after the mailing or delivery of the written request of the **Insured**, the Company shall mail or deliver the following loss information covering at least a three-year period: (a) aggregate information on total closed **claims**, including date and description of occurrence, and any paid losses; (b) aggregate information on total open **claims**, including date and description of occurrence, and amounts of any payments; and (c) information on notice of any occurrence, including date and description of occurrence.

As a condition precedent to the right of any **Insured** to purchase any Extended Reporting Endorsement, such **Insured** must have paid all premiums and deductibles and reimbursed the Company all amounts due the Company under this **Policy**.

(b)   Complimentary Endorsement

If an **Insured** dies, becomes totally disabled and unable to practice law, or retires from the private practice of law (meaning that he or she totally ceases the private practice of law, or enters into public service in a local, state or federal judicial, legislative, executive or military position, and totally ceases the private practice of law during such period of service), each of which qualifying events must occur during the **policy period**, the **Insured** or the **Insured's** estate shall be entitled to an Extended Reporting Endorsement equal to the lesser of the **Policy** limits or $1 million per claim and in the aggregate providing an **extended reporting period** of four years, provided that:

(1)   Prior to the termination of this **Policy**, the **Named Insured** has complied with all the terms and conditions of this **Policy**, including the payment of all premiums and deductibles and reimbursed the Company all amounts when due; and

(2)   The **Insured's** right to practice law in North Carolina has not been suspended or revoked and investigative or disciplinary proceeding(s) which could result in suspension or disbarment have not been instituted by the North Carolina State Bar; and

(3)   The **Insured** has been continuously covered by the Company for at least ten (10) consecutive years immediately prior to the death, disability or retirement of the **Insured**; and

(4)   The Company receives a written request for an Extended Reporting Endorsement under this provision within thirty (30) days from the termination or expiration of the **Policy.**

An Extended Reporting Endorsement issued under this provision does not extend the time period in which to exercise the option to purchase an Extended Reporting Endorsement for an unlimited reporting period.

(c)   In the event that the Company cannot secure through normal marketing channels reinsurance in an amount equal to the reinsurance which the Company had obtained with respect to the **Policy** terminating or expiring, then the obligation of the Company with respect to any Extended Reporting Endorsement shall exist only in an amount not to exceed the amount the Company retained as unreinsured coverage with respect to the **Policy** terminating or expiring.

## III.  Notice of Incident, Claim or Suit

As conditions precedent to coverage afforded by this **Policy**, upon any **Insured** becoming aware of any act(s), omission(s), or incident(s) which could reasonably be expected to be the basis of a **claim** or **suit**, notice thereof must be **reported to the Company** as soon as practicable, together with the fullest information obtainable; and if **claim** is made or **suit** is brought against any **Insured,** such **claim** or **suit** shall immediately be **reported to the Company**, along with every demand, notice, pleading and summons or other process received by such **Insured**.

Grace Period: Such notice, for purposes of making a report of an incident, act or omission, **claim** or **suit** of which any **Insured** became aware during the last thirty days of the **policy period** or **extended reporting period**, will be deemed made during the **policy period** if notice is received by the **Company** within thirty days of the incident, act or omission, **claim** or **suit**, even if beyond the end of the **policy period** or **extended reporting period**.

Such insurance as would otherwise be afforded under this **Policy** shall continue for each **Insured** who, by reason of concealment by one or more other **Insureds**, did not know of, and, in the exercise of reasonable care, could not have discovered, any act(s) or omission(s), incident(s), **claim** or **suit** which, if known, should have been **reported to the Company** pursuant to this paragraph**,** if upon learning of such act(s) or omission(s), incident(s), **claim** or **suit** any **Insured** claiming the benefit of this paragraph promptly **reported to the Company**.

## IV. Assistance and Cooperation of the Insured

As conditions precedent to coverage afforded by this **Policy**:

(a) Each **Insured** shall cooperate with the Company and, at the Company's request, assist in making settlements, in the conduct of **suits**, and in enforcing any right of subrogation, contribution or indemnity against any person or organization, and each **Insured** shall assist the Company in any investigation and attend hearings, mediations, arbitrations and trials, and assist in the securing and giving of evidence and obtaining the attendance of witnesses;

(b) No **Insured** shall voluntarily make any payment, assume any obligation, or incur any expense without the prior written approval of the Company;

(c) Each **Insured** shall cooperate with the Company and, at the Company's request, make available all records and documents and

submit to examination(s) under oath by a representative of the Company at a location in such **Insured's** county of residence, or the county where such **Insured's** primary office  is located, as specified by the Company upon ten (10) days written notice.

The Company shall not make any payment to any **Insured** for fees or expenses incurred by or presented by any **Insured,** nor shall any **Insured** under this **Policy** be reimbursed for defending himself or herself, or other members of his or her firm, in any **claim** or **suit**, except as otherwise specifically set forth in this **Policy**.

### V. Assignment

The interest of any **Insured** in this **Policy** is not assignable. If any **Insured**, contrary to this provision, shall nevertheless assign, or attempt to assign, such **Insured's** rights or interest, this **Policy** with respect to such **Insured** and such assignee shall thereupon terminate and become void, and this Company shall have no obligation to any such **Insured** or assignee.

### VI. Action Against the Company

No action shall lie against the Company unless, as a condition precedent thereto, each **Insured** shall have fully complied with all the terms of this **Policy**, and, in any event, not until the amount of such **Insured's** obligation to pay shall have been finally determined either by final judgment against such **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Company.

Neither an **Insured** nor any other person or organization shall have the right to join the Company as a party in any **suit** against any **Insured** to determine such **Insured's** liability. There shall be no third party beneficiaries of this **Policy**, intended, incidental or otherwise.

### VII. Subrogation

In the event of any payment under this **Policy**, the Company shall be subrogated to all of each **Insured's** rights of recovery therefor against  any person or organization, and the **Insured(s)** shall execute and deliver instruments  and  papers  and  do  whatever  is  necessary  to  secure  such  rights and  aid  in  such  recovery.  No  **Insured**  shall  do  anything  to  prejudice  such  rights.

### VIII. Cancellation

This **Policy** may be cancelled by an **Insured** by surrender thereof to the Company, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. If this **Policy** has been in effect for less than 60 days, the Company may cancel this **Policy** for any reason by mailing or delivering to a **Named Insured** written notice of cancellation stating the reason(s) therefore at least 15 days before the effective date of cancellation. If this **Policy** has been in effect for 60 days or more, the Company may, upon at least 15 days prior written notice delivered or mailed to any **Named Insured**, while stating the precise reason(s) for cancellation, cancel this **Policy** prior to the expiration of the **Policy**, but only for one or more of the following reasons:

1. Nonpayment of premium in accordance with the **Policy** terms; however, cancellation for nonpayment of premium will not be effective if the amount due is paid before the effective date set forth in the notice of cancellation;
2. An act(s) or omission(s) by an **Insured** that constitutes a material misrepresentation or non-disclosure of a material fact in obtaining this **Policy**, continuing this **Policy** or presenting a **claim** under this **Policy**;
3. A material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of the assumption of the risk;
4. A substantial breach of a contractual duty, condition or warranty that materially affects the insurability of the risk;
5. A fraudulent act against the Company by an **Insured** that materially affects the insurability of the risk;
6. Willful failure of an **Insured** to institute reasonable loss  control measures that materially affect the insurability of the risk after written notice by the Company;
7. Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. §58-41- 30;
8. Conviction of an **Insured** of a crime arising out of act(s) that materially affect the insurability of the risk;
9. A determination by the Commissioner of Insurance that the continuation of this **Policy** would place the Company in violation of the laws of North Carolina;
10. A failure of the **Named Insured** to meet the requirements contained in the corporate charter, articles of incorporation or by-laws of the Company, when the Company is organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

The Company may also cancel this **Policy** for any reason not stated above, provided the Company obtains a **Named Insured's** prior written consent, or as otherwise allowed by law.

Mailing to or delivery at the address shown in the **Declarations** which form a part of the **Policy** or, if not so shown, at a **Named Insured's** last known address shall be deemed sufficient notice. Proof of mailing shall be conclusive proof of notice to all **Insureds**.

### IX. Continuation or Non-Continuation of Insurance

The Company hereby gives written notice that this **Policy** will not be "renewed" at the expiration of its term because the Company does not "renew" its policies; rather, if insurance is continued by the Company, it is through the issuance of a new policy.

The Company reserves unto itself the right to elect not to issue to the **Insured(s)** any other or further policy of insurance, or in any manner to continue to insure the **Insured(s)** after the termination of this **Policy** except as provided in **CONDITIONS II. Extended Reporting Endorsement**. If the Company elects not to continue to insure the **Insured(s)** by issuance of a new policy effective immediately upon the expiration of the effective period of this **Policy**, the Company will mail or deliver to the **Named Insured(s)** a written notice of such election stating the reason(s) therefore at least 45 days prior to the expiration date of this **Policy**. The Company need not give such notice if the **Named Insured(s)** has obtained other professional liability insurance, or agreed to the election, or advised the Company of an intent not to seek the issuance of a new policy. Mailing to or delivery at the address shown in the **Declarations** which form a part of the **Policy** or, if not so shown, at a **Named Insured's** last known address shall be deemed sufficient notice. Proof of mailing shall be conclusive proof of notice to all **Insureds**.

### X. Changes

The Company is a direct writer of the insurance provided in this **Policy** and it does not utilize sales agents in its marketing program. Notice to any person or knowledge possessed by any person, other than an officer of the Company or person authorized to accept **Applications** on behalf of the Company, shall neither effect a waiver, nor an estoppel, nor a change in any part of this **Policy**, nor prevent the Company from asserting any right under the terms of this **Policy**; nor shall any prior course of conduct or claims handling or other dealings between the parties effect a waiver or estoppel, or a change in any part of this **Policy**, or prevent the Company from asserting any rights under the terms of this **Policy**; nor shall the terms

of this **Policy** be waived or changed in any respect except by written endorsement issued to form a part of this **Policy** which must be signed by a duly authorized representative of the Company.

**XI. Premiums**

Premiums are due in advance unless the Company, in its sole discretion, has extended the time for payment of premiums by a written Premium Payment Plan. Issuance of a **Policy** is not a waiver of the requirement for the payment of premiums in advance, or payment of premiums in strict accordance with the terms of a Premium Payment Plan. No coverage exists until the advance premium is paid in full, except in the event of a Premium Payment Plan.

**XII. Entire Contact**

This **Policy** including the **Declarations** and endorsement(s) embodies all agreements existing between the **Insured(s)** and the Company relating to this insurance, except to the extent that the Company may have extended the time for payment of premium by a Premium Payment Plan or extended the time for payment of deductibles by an agreement in writing.

**XIII. Mutual Company Policy Provisions**

(a) EACH NAMED INSURED IS A MEMBER OF THE COMPANY

Each **Named Insured** by virtue of the issuance of this **Policy** is a member of the Company so long as this **Policy** is in force and shall be entitled to one vote, either in person or by proxy, at meetings of members of the Company and to such dividends as may be declared payable to members by the Board of Directors of the Company. Upon cancellation or upon other termination of the **Policy**, the **Named Insured** ceases to be a member of the Company.

(b) NONCONTINGENT LIABILITY OF MEMBERS

This **Policy** is nonassessable, and no **Insured** is liable for any amount other than for the payment of the annual premium for this **Policy** and any appropriate deductible or such other reimbursement specifically described, and provided for hereinabove.

(c) DATE OF ANNUAL MEETING

The annual meeting of the members of the Company will be held at 1001 Winstead Drive, Suite 285, Cary, North Carolina on the third Friday in July of each year at 9:00 o'clock a.m. In case the Board of Directors shall elect to change the time or place of such meeting, due notice will be mailed or delivered to each **Named Insured**, at least ten (10) days prior thereto, at the address stated in the most recent **Application**.

# LAWYERS MUTUAL | LIABILITY INSURANCE COMPANY OF NORTH CAROLINA

1001 Winstead Drive, Suite 285 | Cary, North Carolina 27513
Post Office Box 1929 | Cary, North Carolina 27512-1929
919.677.8900 | 800.662.8843 | www.lawyersmutualnc.com

## Declarations

Shope Krohn Attorneys at Law PA
3703 W Market Street, Suite B
Greensboro, NC 27403

**Policy Number:**     0114780-LPL-41

**Policy Period:**     01-03-2025  to 01-03-2026
12:01A.M. Standard Time at the address of the **Named Insured** stated herein.

**Prior Acts Date of Named Insured:**     January 3, 1978

**Limits of Liability:**

| | | |
|---|---|---|
| A. $1,000,000 | A. | Applicable to any **claim** or one or more **related claims**. |
| B. $1,000,000 | B. | Aggregate limit of the Company's liability for all damages and **claims expenses** without regard to the number of **Insureds**, Extended Reporting Endorsements, **claims**, **suits**, or claimants. |

**Deductible:**
(including **claims expenses**)     C. $5,000     C.  See **INSURING AGREEMENT VI. Deductible and Limit of Liability**.

**Premium:**     $3,827.00

**Endorsement Attachments:**
012 052 069 501

In witness whereof, Lawyers Mutual Liability Insurance Company of North Carolina has caused this **Policy** to be signed by its President and countersigned by a duly authorized agent of the Company.

_____
President

_____
Authorized Agent

**Lawyers Professional Liability Policy (This is a Claims-Made and Reported Policy. Defense costs are a part of the Policy Limits and reduce the amount available to pay losses. You should read your Policy for a complete understanding of its Terms, Conditions & Coverages).**

LAWYERS MUTUAL | LIABILITY INSURANCE COMPANY OF NORTH CAROLINA

1001 Winstead Drive, Suite 285 | Cary, North Carolina 27513
Post Office Box 1929 | Cary, North Carolina 27512-1929
919.677.8900 | 800.662.8843 | **www.lawyersmutualnc.com**

## <u>Insured Listing / Prior Acts Date Endorsement</u>

This Endorsement, effective 12:01 A.M. on **January 3, 2025** forms a part of Policy No. **0114780-LPL-41** (the "**Policy**") issued by LAWYERS MUTUAL LIABILITY INSURANCE COMPANY OF NORTH CAROLINA and applies to **SHOPE KROHN ATTORNEYS AT LAW PA** (the "**Named Insured**").

It is hereby understood and agreed that as to each I**nsured** listed below, this **Policy** shall not apply to such **Insured's** act(s) or omission(s), or series of related act(s) or omission(s), occuring or beginning prior to the date listed individually for each **Insured** below ("**Prior Acts Date**").

All **Policy** provisions, terms, exclusions, and conditions, except as provided otherwise in this Endorsement, remain in full force and effect.

| | Name | Licensing State (or Other) | License Number | Prior Acts Date |
|---|---|---|---|---|
| 1 | Clayton Brent Krohn | NC | 25055 | 11-12-2012 |

Authorized Agent

**LAWYERS MUTUAL** | LIABILITY INSURANCE COMPANY OF NORTH CAROLINA

1001 Winstead Drive, Suite 285 | Cary, North Carolina 27513
Post Office Box 1929 | Cary, North Carolina 27512-1929
919.677.8900 | 800.662.8843 | www.lawyersmutualnc.com

## <u>Endorsement Excluding Legal Services Not Provided for the</u>
## <u>Named Insured Law Firm</u>

This Endorsement, effective 12:01 A.M. on **January 3, 2025** forms a part of Policy No. **0114780-LPL-41** (the "**Policy**") issued by LAWYERS MUTUAL LIABILITY INSURANCE COMPANY OF NORTH CAROLINA and applies only to **SHOPE KROHN ATTORNEYS AT LAW PA** (the "**Named Insured**") and amends the **Policy** as follows:

This **Policy** shall not apply to the rendering of or failure to render **legal services** by an **Insured** unless the act(s) or omission(s) in the rendering of or failure to render **legal services** were within the scope of and in furtherance of duties for the **Named Insured**.  This Endorsement shall not apply to any lawyer named in Endorsement #012 for act(s) or omission(s) on and after the prior acts date and before the date of employment by the **Named Insured**.

For purposes of this Endorsement, act(s) or omission(s) in the rendering of or failure to render gratuitous **legal services** for those who are referred by a legal services office qualified for funding by the Federal Legal Services Corporation or sponsored by the North Carolina Bar Association shall be deemed to be within the scope of and in furtherance of duties for the **Named Insured**.

All **Policy** provisions, terms, exclusions, and conditions, except as provided otherwise in this Endorsement remain in full force and effect.

Authorized Agent

END #: 052     (08/01/2015)                         **LegalSvcs**

**LAWYERS MUTUAL** | LIABILITY INSURANCE COMPANY OF NORTH CAROLINA

1001 Winstead Drive, Suite 285 | Cary, North Carolina 27513
Post Office Box 1929 | Cary, North Carolina 27512-1929
919.677.8900 | 800.662.8843 | www.lawyersmutualnc.com

# Financial Fraud Exclusionary Endorsement
## (Real Estate with Safe Harbor)

This Endorsement, effective 12:01 A.M. on **January 3, 2025** forms a part of Policy No. **0114780-LPL-41** (the "**Policy**") issued by LAWYERS MUTUAL LIABILITY INSURANCE COMPANY OF NORTH CAROLINA.

It is hereby understood and agreed that as a condition of the issuance of this **Policy**, the **EXCLUSIONS AND LIMITED WAIVER I. Exclusions**, section of the **Policy** is hereby amended to add this Specific Acts Exclusion. All **Policy** provisions, terms, and conditions, except as expressly provided otherwise in this endorsement, remain in full force and effect.

Irrespective of whether the act(s) or omission(s) alleged in support of a **claim**, **suit**, or theory of liability presented in a **suit**, would fall within **INSURING AGREEMENT, I. Coverage - Attorney, II. Coverage - Fiduciary** or **III. Coverage - Arbitrator & Mediator**, this **Policy** does not afford to any **Insured** any coverage or benefits whatsoever, including, but not limited to, any right to any defense, with respect to:

any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon any act(s) or omission(s) of any **Insured** arising out of, related to, or on account of the loss, misappropriation, or attempted misappropriation of funds, through any dishonest, deceitful, or fraudulent scheme or means, including but not limited to written, electronic, telegraphic, cable, teletype, facsimile, or telephone communications or access to, use of, or change to any software, application, data, or information within any computer, server, electronic device, or electronic account of an **Insured**. This exclusion applies regardless of whether any other act(s) or omission(s) contributed concurrently or in any sequence to the loss, misappropriation, or attempted misappropriation of funds. This exclusionary endorsement shall apply only to funds directly or indirectly connected with or related to any purchase, sale, financing, or refinancing of real estate.

Provided, however, that this endorsement shall not apply to the loss, misappropriation or attempted misappropriation of funds (1) wired or electronically transmitted by or on behalf of a client if any **Insured** had previously obtained the client's written agreement to terms of engagement applicable to the representation that identified a specific IOLTA Trust Account as the only bank account to be used, and that warned the client substantially as follows: "BEFORE SENDING ANY WIRE, CALL OUR OFFICE TO VERIFY THE INSTRUCTIONS.  WE WILL NOT CHANGE WIRING INSTRUCTIONS. IF YOU RECEIVE WIRING INSTRUCTIONS FOR A DIFFERENT BANK, BRANCH LOCATION, ACCOUNT NAME OR ACCOUNT NUMBER, THEY SHOULD BE PRESUMED TO BE FRAUDULENT.  DO NOT SEND ANY FUNDS AND CONTACT OUR OFFICE IMMEDIATELY. FAILURE TO FOLLOW THIS PROCEDURE ENDANGERS YOUR FUNDS," or (2) disbursed by or on behalf of any **Insured** in accordance with a written, original, notarized disbursement instruction authorizing the wiring or electronic transmission of the funds.

Authorized Agent