# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:25-CV-00616-KDB-WCM

| | |
|---|---|
| **CARDINAL FINANCIAL COMPANY, LP,**<br><br>**Plaintiff,**<br><br>v.<br><br>**INVESTORS TITLE INSURANCE COMPANY AND SHOPE KROHN ATTORNEYS AT LAW, P.A.,**<br><br>**Defendants.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Third-Party Defendant Lawyers Mutual Liability Insurance Company of North Carolina's ("Lawyers Mutual") Motion for Judgment on the Pleadings (Doc. No. 35). The Court has carefully considered this motion and the parties' briefs and exhibits. Because the Court finds that Third-Party Plaintiff Shope Krohn Attorneys at Law, P.A. ("Shope Krohn") has plausibly pled a claim under its insurance policy with Lawyers Mutual, the Court will **DENY** the motion.

## I. LEGAL STANDARD

Lawyers Mutual moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *See In re Lowe's Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig.*, 517 F. Supp. 3d 484, 492–93 (W.D.N.C. 2021) (quoting *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir.

1

2002)). A motion for judgment on the pleadings is governed by the standard applicable to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012); *Shipp v. Goldade*, No. 5:19-CV-00085-KDB-DCK, 2020 WL 1429248, at *1 (W.D.N.C. Mar. 19, 2020).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). The Court may also consider documents attached to a motion to dismiss when they are "integral and explicitly relied on in the Complaint," and where "plaintiffs do not challenge [the document's] authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015).

## II.     FACTS AND PROCEDURAL HISTORY

As previously described, "[t]his dispute arises in connection with a real estate fraud scheme spanning several states and numerous companies and individuals, all of whom either seek to place the responsibility for the $500,000+ loss on someone else, decline to provide insurance coverage related to the loss, claim to be a victim of the scheme or cannot be found." Doc. No. 30 at 3. Lawyers Mutual is the insurer of Shope Krohn, the law firm which handled the closing of Plaintiff Cardinal Financial Company's ("Cardinal") loan to the fraudsters. Shope Krohn's third-party claims against Lawyers Mutual seeking insurance coverage for Plaintiff's claims against the law firm are the subject of this motion. *See* Doc. Nos. 31, 34, 35.

Cardinal's Complaint against Investors Title Insurance Company and Shope Krohn alleges that it funded a home loan in the amount of $510,000 that was determined to be fraudulent. Doc. No. 1. After detailing Shope Krohn's responsibilities in connection with the transaction, Cardinal contends that Shope Krohn breached the Closing Instructions and "Shope Krohn's failure to use reasonable care and diligence and its failure to exercise its best judgment in attending to the closing of the Loan, has harmed Cardinal." Doc. No. 1 at ¶¶ 97, 111. Based on these allegations, Cardinal asserts claims against Shope Krohn for breach of contract and professional negligence/breach of fiduciary duty. Doc. No. 1 at ¶¶ 93-111.

Shope Krohn filed its Amended Third-Party Complaint against Lawyers Mutual on February 9, 2026. Doc. No. 31. The Amended Third-Party Complaint includes a complete copy of the Closing Package that Shope Krohn allegedly received prior to closing and the loan being funded. *See* Doc. No. 31 at ¶ 17a; Doc. No. 31-2. Shope Krohn seeks a declaration of coverage under the Lawyers Mutual Professional Liability Claims-Made and Reported Policy (the "Policy")[1] issued to the law firm. Doc. Nos. 31, 31-1.

The Policy contains a "Financial Fraud Exclusionary Endorsement (Real Estate with Safe Harbor)," on which the dispute between Shope Krohn and Lawyers Mutual turns:

> It is hereby understood and agreed that as a condition of the issuance of this **Policy**, the **EXCLUSIONS AND LIMITED WAIVER I. Exclusions**, section of the **Policy** is hereby amended to add this Specific Acts Exclusion. All **Policy** provisions, terms, and conditions, except as expressly provided otherwise in this endorsement, remain in full force and effect.
> Irrespective of whether the act(s) or omission(s) alleged in support of a **claim**, **suit**, or theory of liability presented in a **suit**, would fall within **INSURING AGREEMENT, I. Coverage - Attorney, II. Coverage - Fiduciary** or **III. Coverage - Arbitrator & Mediator**, this **Policy** does not afford to any **Insured** any coverage or benefits whatsoever, including, but not limited to, any right to any defense, with respect to:

---

[1] Under North Carolina law, "[a]n insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings.... When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Hartford Cas. Ins. Co. v. Gelshenen*, 387 F. Supp. 3d 634, 638 (W.D.N.C. 2019), *aff'd sub nom. Hartford Cas. Ins. Co. v. Davis & Gelshenen*, LLP, 801 F. App'x 915 (4th Cir. 2020) quoting *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374 (1986); *see also Firemen's Ins. Co. of Washington D.C. v. Glen-Tree Investments, LLC*, 2012 WL 4191383, at *5 (E.D.N.C. Sept. 19, 2012) ("An insurer has a duty to defend when pleadings allege facts that impose upon an insured a liability covered by the policy."). "Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." *Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d 374.

any **claim**, or any theory of liability asserted in a **suit**, based in whole or in any part upon any act(s) or omission(s) of any **Insured** arising out of, related to, or on account of the loss, misappropriation, or attempted misappropriation of funds, through any dishonest, deceitful, or fraudulent scheme or means, including but not limited to written, electronic, telegraphic, cable, teletype, facsimile, or telephone communications or access to, use of, or change to any software, application, data, or information within any computer, server, electronic device, or electronic account of an **Insured**. This exclusion applies regardless of whether any other act(s) or omission(s) contributed concurrently or in any sequence to the loss, misappropriation, or attempted misappropriation of funds. This exclusionary endorsement shall apply only to funds directly or indirectly connected with or related to any purchase, sale, financing, or refinancing of real estate.

Provided, however, that this endorsement shall not apply to the loss, misappropriation or attempted misappropriation of funds ... disbursed by or on behalf of any **Insured** in accordance with a written, original, notarized disbursement instruction authorizing the wiring or electronic transmission of the funds.

Doc. No. 31-1 at 14.

On February 23, 2026, Lawyers Mutual filed its Answer to the Amended Third-Party Complaint, denying its material allegations. Doc. No. 34. On the same date, Lawyers Mutual filed its Motion for Judgment on the Pleadings. Doc. No. 35. The motion has been fully briefed and is now ripe for the Court's ruling.

## III.    DISCUSSION

The Parties appear to acknowledge both the fact that the law firm has coverage under the insuring agreement of the Policy as well as the application (at a broad level) of the exclusion for fraud. *See* Doc. Nos. 36, 41. Therefore, the parties' disagreement centers on the interpretation of the "authorized disbursement" "safe harbor" in the exclusion. Both sides apply North Carolina law to this dispute. *Id*.

"An insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *C. D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326 N.C. 133, 142, 388 S.E.2d 557 (1990). Courts apply general contract interpretation rules when interpreting an

insurance policy. *Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295, 838 S.E.2d 454 (2020). For example, as in other contracts, the objective of construction of terms in an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued. *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518 (1970). Also, the various terms of the policy "are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773 (1978); *see also Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9, 692 S.E.2d 605 (2010) ("We construe all clauses of an insurance policy together, if possible, so as to bring them into harmony." (citation and internal quotation marks omitted)). If the policy contains a defined term, "the court applies that meaning unless the context requires otherwise." *Wachovia Bank*, 276 N.C. at 354.

However, there are also specific rules of interpretation for insurance policies under North Carolina law, which this Court has applied in several cases. *See Millers Cap. Ins. Co. v. Summit Mgmt. Servs., Inc.*, No. 5:24-CV-00057-KDB-DCK, 2024 WL 3380161, at *2–3 (W.D.N.C. July 11, 2024); *DFA Dairy Brands, LLC v. Primus Builders, Inc.*, No. 521CV00026KDBDSC, 2021 WL 5826785, at *1 (W.D.N.C. Dec. 8, 2021); *Summit Mgmt. Servs., Inc. v. Falls Lake Fire & Cas. Co.*, No. 521CV00110KDBDSC, 2022 WL 738666, at *3–4 (W.D.N.C. Mar. 11, 2022). Significantly, "wherever possible, the policy will be interpreted in a manner which gives, but never takes away coverage." *Wash. Hous. Auth. v. N.C. Hous. Auths. Risk Retention Pool*, 130 N.C. App. 279, 281, 502 S.E.2d 626 (1998) (citation and internal quotation marks omitted). In construing the coverage afforded by the applicable policy, "provisions of insurance policies and compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*,

6

318 N.C. 534, 538, 350 S.E.2d 66 (1986) (citing *Moore v. Hartford Fire Ins. Co.*, 270 N.C. 532, 155 S.E.2d 128 (1967)). To give effect to these principles, "any ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary. *Id.* However, if a court finds that no ambiguity exists, the court must construe the document according to its terms, giving undefined "nontechnical words ... their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." *Woods*, 295 N.C. at 506.

Again, the question before the Court is whether consistent with the rules of construction that narrowly interpret exclusions to coverage,[2] the "safe harbor" for authorized disbursements applies to the facts alleged here. Lawyers Mutual's argument is straightforward. It contends that the "safe harbor" only applies if the Insured receives and relies on a "notarized disbursement instruction authorizing the wiring or electronic transmission of the funds" and that no such document appears in the Closing Package; so, the law firm has no coverage under the Policy. However, in response to Shope Krohn's argument that the Policy does not require a "separate, standalone, specially labeled form of 'notarized borrower wire instructions,'" Doc. No. 41 at 6, Lawyers Mutual (somewhat) softens its stance, allowing that, "any document (however titled or

---

[2] Lawyers Mutual argues that the canon of construction that requires the Court to narrowly construe exclusions to coverage doesn't apply because the "safe harbor" is an "exception" to an exclusion. While it is true that "once an insurer establishes that an exclusion precludes coverage, the burden shifts to the policyholder to show that an exception to the exclusion exists and applies to restore coverage," *Gelshenen*, 387 F. Supp. 3d at 639, that shifting burden does not change how the Court must interpret the "exception." In other words, provisions in an insurance policy – wherever found and however labeled – that afford coverage must be given a broad meaning and those that limit coverage must be narrowly construed. Otherwise, those long-established principles would be significantly and unnecessarily eroded.

labeled) with the required written, original, notarized disbursement instruction authorizing the wiring or electronic transmission of the funds by Shope Krohn will suffice," and arguing that "there is no singular notarized document or collection of notarized documents that provide a disbursement instruction." Doc. No. 43 at 5.

Even using Lawyers Mutual's interpretation of the Policy, the Court finds that Shope Krohn has plausibly alleged that the "safe harbor" applies. The Closing Package includes a number of notarized and non-notarized documents. Such a collection, without more, would not satisfy the "safe harbor." Rather, there must be one or more documents that amount to a notarized disbursement instruction. Among the Closing Package are three documents that – at least plausibly – satisfy this requirement. First, there is a notarized "NAME AFFIDAVIT," dated October 28, 2024, for both Mary K. Strauss and Charles J. Strauss that certifies how their "legal signature" appears. Doc. No. 31-2 at 22-23. And second, also dated October 28, 2024, is a DISBURSEMENT OF SETTLEMENT PROCEEDS TO BORROWER and BORROWER WIRING INFORMATION / AUTHORIZATION, signed by Mary and Charles Strauss. *Id*. at 33-34. While this second document is not itself notarized, the signatures at least arguably match those in the notarized Name Affidavits. So, taken together,[3] Shope Krohn has presented evidence of – in Lawyers Mutual's words – a "collection of notarized documents that provide a disbursement instruction."

Therefore, applying the applicable standard of review for Rule 12 motions, Shope Krohn has stated its claims sufficiently to withstand Lawyers Mutual's motion to dismiss. Further, the

---

[3] It is reasonable, and certainly at least plausible, to construe a notarized "name affidavit" along with a non-notarized document with signatures matching the notarized affidavits as satisfying a requirement of a notarized instruction. Indeed, by its nature, a "name affidavit" has no utility on its own, but is only useful in connection with other documents in which the certified signatures appear.

resolution of these issues and others related to them may well benefit from the development of the relevant facts in discovery, including, but not limited to, any facts establishing the intent of the parties. Accordingly, the Court will deny Lawyers Mutual's motion to dismiss, without prejudice to it having an opportunity to raise these issues at summary judgment. *See DFA Dairy Brands*, 2021 WL 5826785, at *3.

## IV.   ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Lawyers Mutual's Motion for Judgment on the Pleadings (Doc. No. 35) is **DENIED**; and

2. This case shall proceed toward a resolution of the remaining claims on the merits in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: May 5, 2026

Kenneth D. Bell
United States District Judge

9